UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARMAD SYED, individually, and on behalf of all others similarly situated; ASHLEY BALFOUR, individually, and on behalf of all others similarly situated,<br><br>**Plaintiffs**<br><br>v.<br><br>M-I, L.L.C., a Delaware Limited Liability Company, doing business as M-I SWACO; and DOES 1 through 10, inclusive,<br><br>**Defendant** | CASE NO. 1:12-CV-1718 AWI MJS<br><br>ORDER RE: FINDINGS AND RECOMMENDATIONS REGARDING MOTION TO CERTIFY CLASS<br><br>(Docs. 12 and 30) |

## I. Background

Defendant M-I SWACO is a company providing services to customers who drill for oil and gas. In relevant part, Defendant has employees that are drilling fluid specialists, commonly called mud engineers. They deal with various substances, termed mud, which are used to facilitate the physical drilling. Mud engineers work at drill sites operated by Defendant's customers. Defendant employs hundreds of mud engineers who work at drill sites across the country. Defendant pays mud engineers a fixed salary and not on an hourly basis. The position (which covers employees having several job titles) has a particular work schedule. Mud engineers work for fourteen days at a drill site during which they may be on call the whole time and then are given fourteen days off. New hires are given eight weeks of training (if they do not already have the relevant skills from a previous job) before going out to drill sites. Plaintiff Sarmad Syed was a mud engineer in training and Plaintiff Ashley Balfour is a mud engineer employed by Defendant.

Plaintiffs filed suit against Defendant on October 18, 2012. Plaintiffs seek to represent a

class of mud engineers employed by Defendant who they assert were not paid in accord with the Fair Labor Standards Act ("FLSA") and California law.  In key part, the FLSA requires overtime pay for employees who work more than forty hours a week. 29 U.S.C. § 207.  Employees whose positions meet certain conditions are exempt from this requirement. 29 U.S.C. § 213.  Defendant asserts that mud engineers are exempt from the overtime pay requirement.  Plaintiffs made a motion for class certification of the FLSA claim, seeking court approval for sending out notices to potential class members so they can consent to join the opt-in class. Doc. 12.  Defendant opposes the motion. Doc. 21.  Magistrate Judge Michael Seng issued a findings and recommendation ("F&R) that approved of conditional certification of a class comprising

> All persons who were, are, or will be employed by Defendant, on or after the date that is three years before the issuance of an Order authorizing Notice (the 'FLSA Class Period'), in the job position known as drilling fluids specialist ('DFS'), 'mud engineer', 'mud man', 'mud man trainee', or 'consultant mud man', or equivalent titles (the 'FLSA Collective Plaintiffs')

and largely approved of  Plaintiffs' proposed notice. Doc. 30.  Defendant filed objections to the F&R. Doc. 31.  Plaintiffs filed a response to those objections. Doc. 32.

## II. Legal Standards

"A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).

## III. Discussion

Defendant makes five objections to the F&R: (1) the wrong standard was used for conditional certification, (2) Plaintiffs are not similarly situated to other mud engineers, (3) Plaintiffs did not present evidence that the various mud engineers had uniform job duties, (4) consultants should not be part of the class and (5) the language of the notice should be modified and distributed by a third party. Doc. 31, Defendant Objections, 1:11-2:28.  In response, Plaintiffs oppose these challenges and seeks equitable tolling for the time this motion has been pending. Doc. 32, Plaintiffs' Response, 14:26-15:16.

FLSA allows a plaintiff to bring a class action on behalf of "other employees similarly situated" with the wrinkle that the law permits only opt-in classes, rather than the more familiar opt-out classes. 29 U.S.C. § 216(b).  This gives rise to a class certification process that is different than that used in most other class actions.  As Judge Seng pointed out, the Ninth Circuit has not directly stated how FLSA class certification should be structured.  A majority of district courts have used a two step process:

> The first step under the two-tiered approach considers whether the proposed class should be given notice of the action. This decision is based on the pleadings and affidavits submitted by the parties.  The court makes this determination under a fairly lenient standard due to the limited amount of evidence before it.  The usual result is conditional class certification.  In the second step, the party opposing the certification may move to decertify the class once discovery is complete and the case is ready to be tried. Id. If the court finds that the plaintiffs are not similarly situated at that step, 'the court may decertify the class and dismiss opt-in plaintiffs without prejudice.'

Adams v. Inter-Con Sec. Sys., 242 F.R.D. 530, 536 (N.D. Cal. 2007), citing Leuthold v. Destination Am., 224 F.R.D. 462, 467 (N.D. Cal. 2004).  The parties have not objected to use of the overall two step framework.

**A. Standard for Conditional Certification**

Judge Seng evaluated the motion under the first step standard.  Defendant argues that the first step should be skipped and the second step standard should apply.  Several courts have stated that the second step should take place "once discovery is complete." Adams v. Inter-Con Sec. Sys., 242 F.R.D. 530, 536 (N.D. Cal. 2007); Leuthold v. Destination Am., 224 F.R.D. 462, 467 (N.D. Cal. 2004).  Other courts state that the second step motion "is made after discovery is largely complete." Wynn v. National Broadcasting Co., Inc., 234 F.Supp. 2d 1067, 1082 (C.D. Cal. 2002); Pfohl v. Farmers Ins. Group, 2004 WL 554834, *2 (C.D. Cal. 2004).  The difference between "complete" and "largely complete" is the issue.  An earlier opinion of the Eastern District directly examined Defendant's argument and concluded "Courts within this circuit instead refuse to depart from the notice stage analysis prior to the close of discovery.  Several courts have held that the notice stage analysis applies whenever 'discovery has not yet been completed and [the] case is not ready for trial.'  Other courts have held that the notice stage analysis applies at least

when discovery pertinent to collective certification is outstanding.... Skipping to the second stage not only requires the court to evaluate an incomplete (although potentially substantial) factual record- it interferes with the future completion of that record." <u>Kress v. PricewaterhouseCoopers, LLP</u>, 263 F.R.D. 623, 629 (E.D. Cal. 2009), citations omitted.  The first step standard should be used until discovery is complete.

      Even assuming arguendo that "largely complete" is the correct threshold, Defendant has not shown that discovery has reached that stage.  Of note, Judge Seng stated that Defendant did not provide disclosure of mud engineers in a timeframe that would allow Plaintiffs a "meaningful opportunity to question those witnesses." Doc. 30, F&R, 10:3-4.  Defendant has also objected to multiple requests for production of documents concerning potential class members on the basis that they were "premature prior to the Court ruling on Plaintiffs' Motion For Conditional Certification." Doc. 32, Plaintiffs Reply, 5:26-27.  As recognized by Judge Seng, the record does reflect that the parties did indeed assume that separate motions would be made for first and second stage certification issues. See Doc. 30, F&R, 9:13-15; Doc. 20, Dec. 17, 2013 Stipulation, 3:11-13 and 4:8-10.  This suggests that the parties themselves recognized that discovery would be incomplete in a manner such that a second stage analysis would be premature.  The first stage standard for class certification is appropriate at this juncture.

**B. Similarly Situated**

      Plaintiffs allege that "Defendant failed to pay overtime compensation to their employees who worked two-week long rotations where they were either working or on-call to work 24 hours per day.  Defendant, which implemented the shift system and the exempt classification, knew that mud men did not qualify for the exempt classification it applied to them." Doc. 12, Plaintiffs Motion, 7:24-27.  Regarding employees falling under five job titles (Drilling Fluid Specialist I-IV and Drilling Fluid Specialist Senior), the Magistrate Judge concluded that Plaintiffs satisfied the "similarly situated" requirement by "showing that plaintiffs were subject to the same FLSA exemption classification and performed similar job duties." Doc. 30, F&R, 6:16-17.  Defendant challenges both conclusions.  Plaintiffs' evidentiary burden at this stage is to make "substantial

allegations, supported by declarations or discovery, that 'the putative class members were together the victims of a single decision, policy, or plan.'" Lewis v. Wells Fargo & Co., 669 F.Supp.2d 1124, 1127 (N.D. Cal. 2009), quoting Thiessen v. General Electric Capital Corp., 267 F.3d 1095, 1102 (10th Cir. 2001).

**1. FLSA Exemption Classification**

The Magistrate Judge found "plaintiffs have shown that the putative class members were the victims of a single decision, policy, or plan. This requirement is met upon a showing that Plaintiffs were subject to the same uniform classification of exempt status under FLSA. Doc. 30, F&R, 12:7-10. In response, Defendant cites to Ninth Circuit precedent which declined to "adopt a rule that class certification is warranted under Rule 23(b)(3) whenever an employer uniformly classifies a group of employees as exempt, notwithstanding the requirement that the district court conduct an individualized analysis of each employee's actual work activity." Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 945-46 (9th Cir. 2009). Defendant also points out that another Ninth Circuit opinion overturned a district court ruling, finding that "Wang essentially creates a presumption that class certification is proper when an employer's internal exemption policies are applied uniformly to the employees. Such an approach, however, disregards the existence of other potential individual issues that may make class treatment difficult if not impossible. Indeed, this case is a prime example, as the district court identified 'serious issues regarding individual variations' that were not susceptible to common proof." Mevorah v. Wells Fargo Home Mortg., 571 F.3d 953, 958 (9th Cir. 2009), citing Wang v. Chinese Daily News, Inc., 231 F.R.D. 602 (C.D. Cal. 2005).

Reading these opinions reveals that the Ninth Circuit cautions against relying solely on an exemption designation without looking at other factors that show similarity or dissimilarity. See Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 946 (9th Cir. 2009) ("a district court abuses its discretion in relying on an internal uniform exemption policy ***to the near exclusion of other factors*** relevant to the predominance inquiry") emphasis added. The other district court cases cited by the Magistrate Judge in the F&R take this concern into account by also looking at

whether the members of the proposed class share similar job duties. See <u>Kress v. PricewaterhouseCoopers, LLP</u>, 263 F.R.D. 623, 629-30 (E.D. Cal. 2009) ("this standard might allow plaintiffs to receive conditional certification solely on the basis on an employer's uniform classification decision. Cases engaging in notice stage analysis on misclassification claims, however, have required plaintiffs to provide some further allegation or evidence indicating that prospective class members share similar job duties"); <u>Lewis v. Wells Fargo & Co.</u>, 669 F. Supp. 2d 1124, 1128 (N.D. Cal. 2009) ("Plaintiffs meet their burden of showing that all technical support workers are similarly situated with respect to their FLSA claim: all technical support workers share a job description, were uniformly classified as exempt from overtime pay by Defendant and perform similar job duties"). The fact that the proposed class members were exempt under FLSA due to Defendant's compensation policy is not the only factor relied upon to find that they are "similarly situated."

**2. Evidence of Similar Job Duties**

The job descriptions of four positions in question (Drilling Fluid Specialist II-IV and Drilling Fluid Specialist Senior) listed under "Position Function/Responsibilities: Location Specific Function/Responsibilities" are identical. See Doc. 22-1, Exs. 2-5. The job description of a fifth position (Drilling Fluid Specialist I) is identical except for the requirement to "Maintain environmental discharge and consumption records as required by legislation or client." See Doc. 22-1, Ex. 1. Plaintiffs' declarants generally agree that "mud men across the country had the same basic job duties: We would take samples of drilled mud from the mud tanks. The samples would show whether the properties of the drilling fluid, also known as drilling mud, were within specifications designated by Swaco. We would also keep track of inventory." Doc. 12-3, Ashley Balfour Declaration, 2:22-27; see also Doc. 12-4, Sam Syed Declaration, 1:7-12; Doc. 12-5, Alan Crane Declaration, 2:13-18; Doc. 12-6, Adam Doherty Declaration, 1:23-2:3. The main duty of mud engineers was to take measurements of the mud and to make recommendations as to pills (mixes of materials) to send down the drill site to change the mud's consistency. See Doc. 21-2, Ex. E, Matthew Terrence Dewan Deposition, 57:14-17. Defendant admits that all proposed class

members "are in charge of the drilling fluid" but argues that "What that means and what each employee does while they are in charge of the drilling fluid varies dramatically." Doc. 31, Defendant Objections, 13:3-5.  However, Defendant provides no evidence to support that argument.  The Magistrate Judge pointed out that Defendant's own declarants support Plaintiffs' contention that all of them shared similar job duties, namely the "primary responsibility" of ensuring that the consistency of the mud is suitable for drilling. Doc. 30, F&R, 15:4-16:9.  The Magistrate Judge concluded that "While the job function and responsibilities for each position are similar, the positions entail progressively less supervision, and include the training of lower level drilling fluid specialists." Doc. 30, F&R, 14:18-21.  Review of the proffered evidence supports this conclusion.

Defendant argues "the Magistrate [Judge] did not discuss the potential exemption(s) at issue, let alone consider how common evidence can be used to show that hundreds or thousands of mud engineers, who worked at drilling rigs located throughout the United States, were uniformly misclassified as exempt." Doc. 31, Defendant Objections, 11:4-7.  Defendant makes scattershot arguments regarding the exemptions. See Doc. 21, Defendant Opposition, 18:13-20:28.  Defendant does not go into detail on any of them, choosing instead to provide vague speculations as to how they potentially could apply to mud engineers.  Examining the exemptions directly does not support Defendant's assertion of dissimilarity.  The salient legal question is whether these employees were properly classified as exempt under FLSA.  So long as all of the proposed class members are together on one side of the line (either all exempt or all not exempt), they are similarly situated for class certification purposes.  FLSA states that employees who are "employed in a bona fide executive, administrative, or professional capacity" are exempt from the "minimum wage and maximum hour requirements." 29 U.S.C. § 213(a)(1).  Defendant argues that only analysis of individual job experiences can determine whether each potential class member was properly classified. Doc. 31, Defendant Objections 10:16-11:3.  However, there is no evidence at this point that these employees' duties differed such that they would fall on opposite sides of that legal line.

Defendant cites to the "applicability of the administrative exemption." Doc. 21, Defendant

Opposition, 19:1. To qualify for an "administrative capacity" exemption, among other requirements, an employee must have a "primary duty [which] is the performance of office or non-manual work directly related to the management or general business operation of the employer or the employer's customers." 29 C.F.R. § 541.200(a)(2). "To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.... Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities." 29 C.F.R. § 541.201(a) and (b). As stated above the primary responsibility of these employees was to take samples of mud and change its consistency when necessary. Defendant does not provide any legal support for the contention that these duties constitute "office or non-manual work directly related to the management or general business operation." See Doc. 21, Defendant Opposition, 18:17-20:26; Doc. 31, Defendant Objection, 11:13-12-10. This may be a central legal dispute on the merits. Class certification is not the appropriate stage to decide such issues. <u>Stanfield v. First NLC Fin. Servs.</u>, 2006 U.S. Dist. LEXIS 98267, *13 (N.D. Cal. Nov. 1, 2006). Regardless, this legal determination would not defeat class certification as all proposed class members had the same primary job responsibility; the whole proposed class would presumably be uniformly exempt or uniformly not exempt. Nothing in the evidence presented by both parties suggests that the mud engineers' other duties took up substantial parts of their time.

Defendant also suggests that some potential class members are exempt due to advanced knowledge, licensing, and training, 29 C.F.R. § 541.301(a)." Doc. 21, Defendant Opposition, 19:10-11. To qualify as an exempt "professional" employee, an employee must have a "primary duty [which] is the performance of work: (i) Requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual

instruction." 29 C.F.R. § 541.300(a)(2). The five positions do not list any requirement for a specific educational background. See Doc. 22-1, Exs. 1-5. This exemption is restricted to "professions where specialized academic training is a standard prerequisite for entrance into the profession. The best prima facie evidence that an employee meets this requirement is possession of the appropriate academic degree.... The learned professional exemption also does not apply to occupations in which most employees have acquired their skill by experience rather than by advanced specialized intellectual instruction." 29 C.F.R. § 541.301(d). Defendant has not provided any support to suggest that any employee in one of the five positions qualifies for this exemption. Plaintiffs' declarants generally state that "I and the other mud men were not required to have any particular educational background or training to apply for the job." Doc. 12-3, Ashley Balfour Declaration, 1:17-19; see also Doc. 12-4, Sam Syed Declaration, 1:15-17; Doc. 12-5, Alan Crane Declaration, 1:19-21; Doc. 12-6, Adam Doherty Declaration, 1:10-12. One of Defendant's declarants with a Bachelors of Science in Medical Laboratory Sciences states that "My educational background, as well as the time I had spent working in a lab environment, was extremely helpful" but gives no indication that his academic training was necessary to his job. Doc. 21-1, Ex. 4, Benjamin Fullmer Declaration, 1:3-8.

**3. Admissibility of Declarations**

Defendant challenges the declarations of various mud engineers provided by Plaintiffs on the basis that they are inadmissible due to lack of foundation, lack of personal knowledge, relevance, vague and ambiguous, contradicted by deposition testimony, legal conclusion, and/or hearsay. See Doc. 31, Defendant Objections, 18:8-9; Doc. 21-3, Defendant Objections to Evidence. Some courts have found that only admissible evidence be considered at this stage of the proceedings. See Colson v. Avnet, Inc., 687 F. Supp. 2d 914, 928 (D. Ariz. 2010), quoting Harrison v. McDonald's Corp., 411 F. Supp. 2d 862, 865-66 (S.D. Ohio 2005). However, the more prevalent practice is to relax this requirement: "Though the issue has not been squarely addressed by the Ninth Circuit, certain 'courts have held that on a motion for class certification, the evidentiary rules are not strictly applied and courts can consider evidence that may not be

admissible at trial.'" Parkinson v. Hyundai Motor Am., 258 F.R.D. 580, 599 (C.D. Cal. 2008), quoting Rockey v. Courtesy Motors, Inc., 199 F.R.D. 578, 582 (W.D. Mich. 2001); see also Davis v. Social Service Coordinators, Inc., 2012 WL 3744657, *7 (E.D. Cal. Aug. 28, 2012) ("Many courts have relaxed the evidentiary requirements for plaintiffs at the conditional certification stage because the evidence has not been fully developed through discovery and the evidence will be subjected to greater scrutiny at the second stage"); Dominguez v. Schwarzenegger, 270 F.R.D. 477, 483 n.5 (N.D. Cal. 2010) ("unlike evidence presented at a summary judgment stage, evidence presented in support of class certification need not be admissible at trial").

Defendant's central objection appears to be that the individual declarants only know their own working conditions/job duties and have no basis to state what they are for other mud engineers working at other sites. Doc. 21, Defendant Objections, 18:14-21.  The court notes that (as stated above) Defendant's own declarants concur with Plaintiffs' declarants as to what the substance of the mud engineer job was.  Further it appears that the basis for declarants' generalizations about the mud engineer position may have been conversations with other mud engineers. See e.g., Doc. 12-3, Ashley Balfour Declaration, 4:25-27 ("based on my conversations with other mud men...").  At this stage, the limitation on hearsay is relaxed.  The evidence provided by both Plaintiffs and Defendant support the conclusion that mud engineers generally had similar job duties.

**D. Consultants**

Defendant argues that mud engineers who were consultants may not be part of the proposed class as they are independent contractors who are not subject to the FLSA. Doc. 31, Defendant Objections, 17:9-18:6. In briefing the underlying motion before the Magistrate Judge, Defendant did not make this argument; instead, Defendant asserted that consultants were not similarly situated to the rest of the mud engineers because they were paid more money, exercised more discretion, and had more experience. See Doc. 21, Defendant Opposition, 23:8-28.  In key part, Defendant never argued that consultants were independent contractors.  It is not known at this point if Plaintiffs agree that consultants were independent contractors or if they consider

Defendant a joint employer. A district court has discretion to consider or decline new arguments raised for the first time in an objection to a findings and recommendations. See Brown v. Roe, 279 F.3d 742, 745 (9th Cir. 2002); see also Hanna v. County of Mariposa, 2014 U.S. Dist. LEXIS 71396, *3-4 (E.D. Cal. May 22, 2014); Razzoli v. Fed. Bureau of Prisons, 2014 U.S. Dist. LEXIS 74148, *13 (S.D.N.Y. May 30, 2014) ("new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all"). This court will not examine the issue at this point. This is only the first step in class certification and the question may be better resolved at a later stage when the evidence is more complete.

**E. Proposed Notice**

Defendant has made several objections to the proposed notice process. The F&R made a few modifications to the proposed text. In approving of the language contained in these notices, "trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." Hoffmann-La Roche v. Sperling, 493 U.S. 165, 174 (1989). Those changes have not been challenged by the parties and are accepted.

Defendant makes a number of additional minor objections to the text of the proposed notice. Under the heading "Your Current Legal Rights And Options In This Lawsuit" and "Do Nothing," the language "in the FLSA claims asserted" if to be removed. The sentence should read "If you fail to return the Consent to Join form promptly, you will not be given the opportunity to participate in this lawsuit" to clarify that failure to consent does not foreclose recovery of FLSA claims in a separate action. The other minor changes requested by Defendant are unnecessary.

More prominently, Defendant asks that the notices be sent out by a third party administrator rather than Plaintiffs' counsel directly. Doc. 31, Defendant Objection, 21:15. Plaintiffs agree "provided that, Plaintiffs' counsel still receives (and, thus, jointly with the [third-party administrator]) from Defendant a class list, in Microsoft excel, including the names, last known mailing addresses, telephone numbers, and email addresses." Doc 32, Plaintiffs Response, 14:9-11. This does not resolve the issue as Defendant specifically argues "There is no legitimate

11

reason why Plaintiffs' counsel needs the class contact information at this stage of the case." Doc. 31, Defendant Objection, 21:20-21.  The real dispute is over Plaintiffs' counsel's access to that information.

Some courts have resisted providing contact information to plaintiffs' counsel at this stage "given privacy concerns implicit in information derived from personnel records." Torres v. CSK Auto, Inc., 2003 U.S. Dist. LEXIS 25092, *9 (W.D. Tex. Dec. 17, 2003); Davenport v. Charter Communs., LLC, 2014 U.S. Dist. LEXIS 40574, *24 (E.D. Mo. Mar. 27, 2014).  However, that does not appear to be the practice of other courts, notably the Northern District. See Deatrick v. Securitas Sec. Servs. USA, 2014 U.S. Dist. LEXIS 148835, *15 (N.D. Cal. Oct. 20, 2014) ("The Court therefore rejects Defendant Securitas's suggestion that disclosure of this information to Plaintiff violates employees' privacy rights"); Otey v. CrowdFlower, Inc., 2013 WL 4552493, *6 (N.D. Cal. 2013) ("courts routinely require defendants to produce the contact information of putative class members"); Lewis v. Wells Fargo & Co., 669 F. Supp. 2d 1124, 1128 (N.D. Cal. 2009) ("the Court is authorized to order the production of potential class members' contact information to Plaintiff's counsel").

Defendant also objects to providing the "telephone numbers or email addresses of current and former employees.  Providing names and last known mailing addresses to a third party administrator should be sufficient, and is all that is contemplated by the notice which Plaintiffs have requested." Doc. 31, Defendant Objections 22:15-18.  However, Plaintiffs ask for both physical and email delivery of the notice so a physical mailing address is insufficient. Doc. 12-1, Plaintiffs Proposed Order, 2:28-3:2.  In one case, the one court noted, "potential class members, technical support workers, are likely to be particularly comfortable communicating by email and thus this form of communication is just as, if not more, likely to effectuate notice than first class mail." Lewis v. Wells Fargo & Co., 669 F. Supp. 2d 1124, 1128-29 (N.D. Cal. 2009).  Though this case does not involve information technology employees, email is an increasingly important means of contact.

Upon consideration, the concerns about privacy are significant.  Plaintiffs' counsel will not be given potential class members' contact information; that data will be provided to the third party

administrator only, who must take a more active role in this process. Defendant must turn over to the administrator (1) names, (2) current and past physical addresses, (3) current and past email addresses, (4) current and past telephone numbers, and (5) social security numbers. The administrator is to mail the notice to the current physical address(es) and e-mail the notice to the current e-mail address(es). If the administrator is notified that the current physical address is incorrect (for example, if the notice is returned as undeliverable), the administrator is to then take additional measures to discover a correct address and resent the notice. It is in everyone's interest to ensure that the notices reach the entire potential class to avoid having to revisit the issue at a later date. See De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 313 (3rd Cir. 2003) (reopening FLSA opt-in period due to large number of incorrect addresses and failure to mail notices to new employees).

Defendant would like responses to the notice (consent to join the class) to be sent to the third party administrators rather than Plaintiffs' counsel. Doc. 31, Defendant Objections, 20:9-11. Once a party consent to join this suit, there is no need to hide their identity from Plaintiffs' counsel; the privacy concerns would no longer have the same weight.

Defendant requests that contact information for its own counsel be provided in the notice. Doc. 31, Defendant Objections, 20:12-13. The request is denied as "Courts in this circuit have similarly held that requiring the inclusion of defense counsel's name is without a basis in either law or logic." Chastain v. Cam, 2014 U.S. Dist. LEXIS 102465, *26 (D. Or. July 28, 2014), citing Adams v. Inter-Con Sec. Sys., 242 F.R.D. 530, 541 (N.D. Cal. 2007); Morden v. T-Mobile USA, Inc., 2006 U.S. Dist. LEXIS 68696, *11 (W.D. Wash. Sept. 12, 2006).

Plaintiffs request that potential class members be given 120 days to respond to the notice. Doc. 12-1, Proposed Order, 3:3-5. Defendant requests that the deadline be reduced to 45 days. Doc. 31, Defendant Objections, 20:17-19. Several courts have found that 120 days is excessive. See Gamble v. Boyd Gaming Corp., 2014 U.S. Dist. LEXIS 78069, *15 (D. Nev. June 6, 2014) (granting 60 days); Guy v. Casal Inst. of Nev., LLC, 2014 U.S. Dist. LEXIS 65056, *16-17 (D. Nev. May 12, 2014) (granting 90 days); Davenport v. Charter Communs., LLC, 2014 U.S. Dist. LEXIS 40574, *25 (E.D. Mo. Mar. 27, 2014) (granting 60 days); Afsur v. Riya Chutney Manor

13

LLC, 2013 U.S. Dist. LEXIS 96654, *8 (D.N.J. July 10, 2013) (granting 60 days). Other courts have approved a 120 day response period. See Kassman v. KPMG LLP, 2014 U.S. Dist. LEXIS 93022, *24 (S.D.N.Y. July 8, 2014); Mott v. Driveline Retail Merch., Inc., 2014 U.S. Dist. LEXIS 69520, *19 (E.D. Pa. May 21, 2014). In approving longer periods of time, courts have accepted arguments that "the potential class is transitory and there is a high turnover rate, meaning that additional investigation may be required in order to contact potential opt-in plaintiffs." Anyere v. Wells Fargo, Co., 2010 U.S. Dist. LEXIS 35599, *15 (N.D. Ill. Apr. 12, 2010); Carrillo v. Schneider Logistics, Inc., 2012 U.S. Dist. LEXIS 26927, *56-57 (C.D. Cal. Jan. 31, 2012) (granting 180 days because "This case concerns low-wage, immigrant workers in an industry with high turnover. Thus, it is reasonable to expect that potential opt-in plaintiffs who worked for defendants in the past are likely to have moved several times since then, and often away from the area"). Where such an explanation is given, granting an extended the time period is reasonable. But, Plaintiffs have not provided argument that the proposed class would be a particularly difficult group to contact. In the absence of special circumstances, "timeframes of sixty to ninety days appear to have become the presumptive standard in this District." Benedict v. Hewlett-Packard Co., 2014 U.S. Dist. LEXIS 18594, *58 (N.D. Cal. Feb. 13, 2014) (granting 90 days instead of 120); Adams v. Inter-Con Sec. Sys., 242 F.R.D. 530, 542 (N.D. Cal. 2007) (granting 90 days instead of 120). A 90 day period for returning the consent forms will be permitted in this case.

**F. Equitable Tolling**

Due to the lengthy amount of time this motion has been under consideration, Plaintiffs request that equitable tolling be applied to the statute of limitations. Procedural delay may also be a valid reason to apply equitable tolling. See Helton v. Factor 5, Inc., 2011 WL 5925078, *2 (N.D. Cal. 2011). This motion was originally filed on July 8, 2013. The motion was set for hearing on March 28, 2014. The parties agreed to toll the running of the statute of limitations from August 5, 2013 to the hearing date. Doc. 15. No hearing was held. The F&R was issued on July 30, 3014. This motion will not be resolved until a final version of the proposed notice is approved. Equitable tolling is warranted given amount of time this issue has been before the court.

14

## IV. Order

The Finding and Recommendations issued July 30, 2014, are ADOPTED with modifications.

The Court conditionally certifies a class consisting of: "All persons who were or are employed by Defendant, on or after August 5, 2010 (the 'FLSA Class Period'), in the job position known as drilling fluids specialist ('DFS'), 'mud engineer,' 'mud man,' 'mud man trainee,' or 'consultant mud man,' or equivalent titles (the 'FLSA Collective Plaintiffs')."

By 4:00 PM, January 8, 2015, Defendant is ORDERED to have prepared in Microsoft excel, a class list that includes, to the extent known by Defendant, the names, last known mailing addresses, all prior mailing address, last known email addresses, all prior email addresses, last known telephone number, all prior telephone numbers, and social security numbers of present and former employees falling within the above class description and to file a notice certifying that the dataset is ready to be given to a third party administrator. By 4:00 PM, January 8, 2015, Plaintiffs are ORDERED to file with the court an updated proposed notice that complies with the rulings of this order and to name a third party administrator that is able and willing to comply with the procedures specified in this order.

Equitable tolling applies through January 13, 2015, when this court anticipates issuing a final order approving issuance of the notices to potential class members.

IT IS SO ORDERED.

Dated:   November 26, 2014

SENIOR DISTRICT JUDGE