1 **SPIRO LAW CORP.**
2 Ira Spiro (SBN 67641)
     ira@spirolawcorp.com
3 10573 West Pico Blvd., #865
  Los Angeles, California 90064
4 Tel: (310) 235-2350

5 Attorneys for Plaintiffs Sarmad Syed and Ashley Balfour
6 and the Putative Classes

7 [*Additional counsel listed on following page*]

8

9 **UNITED STATES DISTRICT COURT**

10 **EASTERN DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| SARMAD SYED and ASHLEY BALFOUR, individually, and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) |
| M-I, L.L.C., a Delaware Limited Liability Company, doing business as M-I SWACO; and, DOES 1 through 10, inclusive, | ) ) ) ) ) |
| Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

**CASE NO.12-CV-01718 DAD (MJS)**

**CLASS ACTION**

**[UNOPPOSED]**

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**DATE:** **February 7, 2017**
**TIME:** **9:30 a.m.**
**DEPT:** **Courtroom 5 (7th Floor)**
**JUDGE:** **Hon. Dale A. Drozd**

**Filed:** **October 18, 2012**
**Trial date:** **None set**

1

**COHELAN KHOURY & SINGER**

2
Michael D. Singer (SBN 115301)
    msinger@ckslaw.com

3
Diana M. Khoury (SBN 128643)
    dkhoury@ckslaw.com

4
J. Jason Hill (SBN 179630)
    jhill@ckslaw.com

5
605 C Street, Suite 200
San Diego, California 92101

6
Tel.: (619) 595-3001/Fax: (619) 595-3000

7

**BLANCHARD LAW GROUP, APC**

8
Lonnie C. Blanchard, III (SBN 93530)
    lonnieblanchard@gmail.com

9
3311 East Pico Boulevard
Los Angeles, California 90023

10
Tel.: (213) 599-8253/Fax: (213) 402-3949

11

**HOLMES LAW GROUP, APC**

12
Jeffrey D. Holmes (SBN 100891)
    jeffholmesjh@gmail.com

13
3311 East Pico Boulevard
Los Angeles, California 90023

14
Tel.: (310) 396-9045

15

16
Attorneys for Plaintiffs SARMAD SYED and ASHLEY BALFOUR
and the Putative Classes

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ................................................................................... 1

II.   BACKGROUND .................................................................................... 2

    A.   Defendant, M-I, LLC dba M-I Swaco ............................................ 2

    B.   Plaintiffs Sarmad Syed and Ashley Balfour .................................... 3

    C.   Class Members' Duties, Responsibilities and Background .................. 3

III.  LEGAL ANALYSIS AND ARGUMENT ................................................. 4

    A.   California Law Presumes All Employees Eligible for Overtime Pay ..... 4

IV.  PROCEDURAL BACKGROUND AND DISCOVERY HISTORY ............... 5

    A.   Litigation History .......................................................................... 5

    B.   Investigation And Discovery Conducted ........................................ 8

V.   MEDIATION AND SUMMARY OF PROPOSED SETTLEMENT TERMS ......... 9

    A.   Mediation ..................................................................................... 9

    B.   Proposed Settlement ..................................................................... 9

    C.   Net Settlement Amount, ("NSA") ................................................ 10

    D.   Formula for Distribution of NSA to Participating Class Members ..... 10

    E.   The Notice, No Claim Form Required and Release of Claims ............ 11

VII. THE COURT SHOULD PRELIMINARILY APPROVE THE CLASS ACTION SETTLEMENT AND SET A FINAL FAIRNESS HEARING DATE ............ 12

    A.   Class Action Settlements are Subject to Court Review and Approval Under the Federal Rules of Civil Procedure .......................................................... 12

    B.   The Proposed Settlement is Fair, Adequate and Reasonable ............... 14

         1.   Strength of Plaintiffs' Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation ................................................. 14

         2.   The Extent of Discovery and Stage of the Proceedings Support the Settlement ............................................................................. 16

         3.   The Settlement is the Product of Serious, Informed and Non-Collusive Negotiations and Is a Reasonable Compromise of Claims ..................... 16

i

Memorandum of Points and Authorities in Support of Motion for Order Granting Preliminary Approval Of Class Action Settlement - Case No. 12CV01718 DAD (MJS)

VIII.   CLASS   COUNSELS'   ATTORNEYS'   FEES   REQUEST   AND   CLASS
        REPRESENTATIVE SERVICE PAYMENT ............................................................ 20

        A.      Motion for Award of Attorneys' Fees and Litigation Costs .............................. 20

        B.      Class Representative Service Payment to the Named Plaintiffs ........................ 20

IX.     THE PROPOSED RULE 23 CLASS SHOULD BE CONDITIONALLY CERTIFIED . 21

        A.      All Rule 23(a) Prerequisites Certification Are Present ...................................... 21

                1.      Rule 23(a)(1) —Numerosity ....................................................... 22

                2.      Rule 23(a)(2) —Commonality .................................................... 22

                3.      Rule 23(a)(3) —Typicality ......................................................... 22

                4.      Rule 23(a)(4) —Adequacy of Representation ............................. 23

        B.      Rule 23(b)(3) —Predominance and Superiority .................................................. 23

        C.      PAGA Penalty Claims .......................................................................................... 24

X.      CONCLUSION ............................................................................................................... 24

<u>TABLES OF **AUTHORITIES**</u>

**PAGE**

<u>**CASES**</u>

*Amchem Prods., Inc. v. Windsor*
        521 U.S. 591 (1997) .................................................................................... 21, 22, 23

*Armstrong v. Bd. of Sch. Directors*
        616 F.2d 305 (7th Cir. 1980) ................................................................................ 13

*Berry v. School Dist. of City of Benton Harbor*
        184 F.R.D. 93 (W.D. Mich. 1998) ........................................................................ 13

*Blackie v. Barrack*
        524 F.23d 891 (9th Cir. 1975) .............................................................................. 21

*Boyd v. Bechtel Corp.*
        485 F. Supp. 610 (N.D. Cal. 1979) ....................................................................... 16

*Brotherton v. Cleveland*
        141 F. Supp. 2d 907 (S.D. Ohio 2001) ................................................................. 21

*Class Plaintiffs v. City of Seattle*
        955 F.2d 1268 (9th Cir. 1992) .............................................................................. 14

ii

Memorandum of Points and Authorities in Support of Motion for Order Granting Preliminary
Approval Of Class Action Settlement - Case No. 12CV01718 DAD (MJS)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Comcast Corp. v. Behrend*
  133 S. Ct.1426 (2013) ................................................. 15

*Crown, Cork & Seal Co. v. Parker*
  462 U.S. 345 (1983) ................................................... 23

*Dalheim v. KDFW-TV*
  918 F.2d 1220 (5th Cir.1990) ...................................... 5

*Dunleavy v. Nadler*
  213 F.3d 454 (9th Cir. 2000) ..................................... 12

*Felzen v. Andreas*
  134 F.3d 873 (7th Cir. 1998) ..................................... 13

*Garcia v. Gordon Trucking, Inc.*
  2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) .................. 24

*Glass v. UBS Financial Services*
  2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) .... 21

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1988) ...................... 14, 22, 23

*Harris v. Superior Court*
  53 Cal.4th 174 (2011) ................................................ 5

*Hopson v. Hanesbrands Inc.*
  2008 WL 3385452 (N.D. Cal. Aug. 8, 2008) .................. 24

*Hopson v. Hanesbrands Inc.*
  2009 WL 928133 (N.D. Cal. Apr. 3, 2009) ................... 24

*In re Mego Fin. Corp. Sec. Litig.*
  213 F. 3d 454 (9th Cir. 2000) ................................... 19

*In re Mid-Atlantic Toyota Antitrust Litig.*
  564 F. Supp. 1379 (D. Md. 1983) .............................. 13

*In re Omnivision Technologies, Inc.*
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ....................... 20

*Industrial Welfare Com. v. Superior Court*
  27 Cal. 3d 690 (1980) ............................................... 4

*James v. City of Dallas*
  254 F.3d 551 (5th Cir. 2001) .................................... 22

Memorandum of Points and Authorities in Support of Motion for Order Granting Preliminary
Approval Of Class Action Settlement - Case No. 12CV01718 DAD (MJS)

*Linney v. Cellular Alaska Partnership*
   151 F.3d 1234 (9th Cir. 1998) .......................................................................... 12, 19, 20

*Morillion v. Royal Packing Co.*
   22 Cal.4th 575 (2000) ........................................................................................ 4

*Nordquist v. McGraw-Hill Broadcasting Co.*
   32 Cal. App.4th 555 (1995) ............................................................................... 4, 5

*Officers for Justice v. Civil Serv. Comm'n*
   688 F.2d 615 (9th  Cir. 1982) ............................................................................ 19, 20

*Peabody v. Time Warner Cable, Inc.*
   59 Cal.4th 662 (2014) ........................................................................................ 5

*Ramirez v. Yosemite Water Co.*
   20 Cal.4th 785 (1999) ........................................................................................ 4, 5

*Sav-On Drug Stores, Inc. v. Sup. Ct.*
   34 Cal. 4th 319 (2004) ....................................................................................... 4

*Singer v. Becton Dickinson & Co.*
   2010 U.S. Dist. LEXIS 53416 (S.D. Cal. June 1, 2010) .................................. 21

*Staton v. Boeing Corp.*
   327 F.3d 938 (9th Cir. 2003) ............................................................................. 20

*Torrisi v. Tucson Elec. Power Co.*
   8 F.3d 1370 (9th Cir. 1993) ............................................................................... 14

*Van Vranken v. Atlantic Richfield Co.*
   901 F. Supp. 294 (N.D. Cal. 1995) ................................................................... 21

*Ventura v. New York City Health and Hosp., Inc.*
   125 F.R.D. 595 (S.D.N.Y. 1989) ....................................................................... 22

*Villacres v. ABM Indus. Inc.*
   189 Cal. App. 4th 562 (2010) ............................................................................ 24

*Wal-Mart, Inc. v. Dukes*
   131 S. Ct. 2541 (2011) ....................................................................................... 15

*Whitford v. First Nationwide Bank*
   147 F.R.D. 135 (W.D. Ky. 1992) ....................................................................... 13

Memorandum of Points and Authorities in Support of Motion for Order Granting Preliminary
Approval Of Class Action Settlement - Case No. 12CV01718 DAD (MJS)

# STATUTES AND REGULATIONS

**PAGE**

*California Business and Professions Code*
    § 17200, *et seq*............................................................................................ 6, 11

*California Labor Code*
    § 201-203.......................................................................................................... 6
    § 203............................................................................................................... 18
    § 226.......................................................................................................... 6, 18
    § 226.7............................................................................................................. 6
    § 512............................................................................................................... 6
    § 1174............................................................................................................. 6
    § 2699, *et seq*.................................................................................................. 6

*Federal Rules of Civil Procedure*
    Rule 23 ..................................................................................................passim
    Rule 23(a).................................................................................................21, 22
    Rule 23(a)(1).................................................................................................. 22
    Rule 23(a)(2).................................................................................................. 22
    Rule 23(a)(3).................................................................................................. 22
    Rule 23(a)(4).................................................................................................. 23
    Rule 23(b)(3).................................................................................................. 23
    Rule 23(b)(3)(D)............................................................................................ 22
    Rule 23(e)..................................................................................................12, 13
    Rule 23(g)(1).................................................................................................. 23
    Rule 30(b)(6)................................................................................................... 8

*United States Code*
    Title 28, §636(b)(1)......................................................................................... 6
    Title 29, §216(b)........................................................................................ 2, 5, 6

# MISCELLANEOUS AUTHORITIES

4 Herbert Newberg & Alba Conte, *Newberg on Class Actions,* vol. 4 (4th ed. 2002)
    § 11.22, et seq................................................................................................ 13
    § 11.25 ........................................................................................................... 13

Manual for Complex Litigation (Fourth) (2004)
    § 21.632 ......................................................................................................... 13

v

Memorandum of Points and Authorities in Support of Motion for Order Granting Preliminary
Approval Of Class Action Settlement - Case No. 12CV01718 DAD (MJS)

1   I.   **INTRODUCTION**

2         Plaintiffs Sarmad Syed and Ashley Balfour ("Plaintiffs") seek preliminary approval of a

3   proposed F.R.C.P. Rule 23 Class Action and a proposed Fair Labor Standards Act ("FLSA")

4   Collective Action Settlement, individually and on behalf of the proposed Class of individuals

5   employed by Defendant M-I, LLC, dba M-I Swaco ("Defendant" or "Swaco") in a Covered

6   Position[1] at any time during the relevant Class Period[2] who, based on the allegations in the

7   operative pleading, were misclassified as "exempt" from the requirements of overtime wages either

8   under California law or under the FLSA. Declaration of Isam C. Khoury ("Khoury Decl.,") ¶8.

9         The putative class action and FLSA collective action was filed on October 18, 2012 as a

10  hybrid claim due to substantive differences between California law and federal law pertaining to

11  overtime and exemption status for an ascertainable group of employees commonly referred to as

12  Drilling Fluid Specialists (DFS) or "Mud Men" operating on platforms to extract hydro-carbons

13  from wells throughout the United States. On November 26, 2014, the Court granted Collective

14  Certification of the FLSA Class and by June, 2016, Plaintiffs' FRCP Rule 23 motion for Class

15  Certification was briefed, but not heard to give the Counsel for the Parties and opportunity to

16  explore the possibility of a mediated settlement before an experienced and neutral mediator.

17  Khoury Decl. ¶9. In short, the Parties utilized the uncertainty of the certification to go to the

18  bargaining table with a highly reputable and experienced mediator, Jeff Krivis.

19        There are an estimated 115 current and former persons employed in a Covered Position in

20  states outside of California (the "FLSA Class") during the FLSA Class Period (from November 26,

21  2011 through November 30, 2016), and an estimated 353 current and former persons employed in a

22

23  [1]"Covered Position" means the position in which the Plaintiffs and the Classes were employed by
24  Defendant any time during the relevant Class Period as identified in Appendix 1 of the Settlement
    Agreement which includes drilling fluid specialist, mud engineer, mud man trainee, and consultant
25  mud man and the like. Settlement Agreement and Release of Claims, ("Settlement Agreement"), ¶
    I.O.-Appendix 1.

26  [2]The "California Rule 23 Class Period" or "California Class Period" means the period from
    October 18, 2008 through November 30, 2016, (four years back from the date of filing this
27  Action). The "FLSA Class Period" means the period from November 26, 2011 through November
    30, 2016, (four years back from the date of FLSA Conditional Certification), Settlement
28  Agreement, ¶¶ I. H, S.

Memorandum of Points and Authorities in Support of Motion for Order Granting Preliminary
Approval Of Class Action Settlement - Case No. 12CV01718 DAD (MJS)

Covered Position in the state of California (the "California Class")[3] during the California Class Period (from October 18, 2008 through November 30, 2016).  Khoury Decl. ¶10.

Subject to Court approval, Plaintiffs and the putative Class have settled their claims against Defendant for the non-reversionary Gross Settlement Amount ("GSA") of $7,000,000, which sum includes payments for all attorneys' fees and litigation costs, settlement administration expenses for dissemination of the Class notice and performing settlement administration, the payment to the California Labor Workforce Development Agency ("LWDA") in settlement of any and all alleged claims for penalties that may be sought or otherwise available under the California Private Attorneys' General Act of 2004 (the "PAGA"), and the proposed Class Representative service payment to each named Plaintiff. Khoury Decl. ¶12.

For purposes of approval of the proposed Settlement, (1) Plaintiffs seek continued certification of the FLSA Class as a collective action under 216(b) of the FLSA, (2) provisional certification of the California Class pursuant to FRCP Rule 23, (3) the appointment of Plaintiffs' attorneys as Class Counsel, (4) the appointment of named Plaintiffs as the Class Representatives, and (5) the appointment of CPT Group Class Action Administrators, Inc. ("CPT") as the Settlement Administrator.  Plaintiffs also respectfully request the Court to set a date for the final fairness and approval hearing should preliminary approval be granted, so that the date and time can be included in a Notice to Class for any appearance or objection. Khoury Decl. ¶13.

## II.     BACKGROUND

**A.     Defendant, M-I, LLC dba M-I Swaco**. Defendant provides services and products related to drilling for hydrocarbons.[4]  It has employed hundreds of Class Members in the Covered Positions shown in Appendix 1 of the Settlement Agreement throughout the United

---

[3]We refer to the FLSA Class and California Class collectively sometimes as the "Class." Khoury Decl. ¶11.

[4]See, http://www.slb.com/services/miSWACO/about.aspx: Company Profile, "With over 13,000 employees in more than 75 countries around the world, M-I SWACO is a vital part of the world's hydrocarbon exploration and production industry….We are the leading supplier of drilling fluid systems engineered to improve drilling performance by anticipating fluids-related problems, fluid systems and specialty tools designed to optimize wellbore productivity, production technology solutions to maximize production rates, and environmental solutions that safely manage waste volumes generated in both drilling and production operations."

States. The positions held by members of the Class are collectively referred to in this motion as "Mud Men." The term, in the industry, also applies to anyone, including women, though as can be imagined, times are changing on this vernacular. Khoury Decl. ¶14.

**B.** **Plaintiffs Sarmad Syed and Ashley Balfour.** Named Plaintiff Sarmad Syed was a mud engineer in training working for Defendant from August 15, 2011 to September 19, 2011. Plaintiff Syed was assigned to work and to study in California. As a new recruit, he was assigned to "ride along" for two to six weeks prior to going to Houston, Texas to attend training school. Plaintiff Ashley Balfour worked for Defendant from August, 2011 through November, 2012 at numerous drilling sites in California, i.e., Elk Hills, Kern River, Lost Hills and San Ardo. Khoury Decl. ¶15.

**C.** **Class Members' Duties, Responsibilities and Background.** Plaintiffs believe that Mud Men performed substantially the same job duties – to assist oil and gas rig operators such as Exxon, Shell, BP Oil, etc., in drawing and testing samples of oil from drilling fluid tanks. Other than the location of the rigs and operators during the Class Periods, there was no significant degree of variability in duties. Mud Men shared the same basic job duties of those working around the country, generally working at an oil rig for two weeks straight (and sometimes longer), and then generally having two weeks off. During the two weeks on duty, Mud Men generally were assigned 24-hour shifts and required to stay on the job site at all times. Khoury Decl. ¶16.

Mud Men were not required to have any particular educational background, engineering or technical science degrees, licenses or certification to be eligible for or to apply for any Mud Man position. Khoury Decl. ¶17. Virtually all Mud Men recruits were required to attend a two-month "mud school" training at Defendant's offices in Houston, Texas. Other than updates on new techniques, the training was substantially identical. At all times during the Class Periods, Defendant deemed the members of the Class as salaried and/or exempt and paid them on a monthly basis no matter how many hours they worked. Plaintiffs contend the job duties performed by Mud Men were manual, routine and repetitive skilled work, and not the type of work essential to invoke any recognized California exemption from the requirements of paying overtime wages. Plaintiffs contend all Covered Positions were eligible for the payment of overtime wages and other benefits

- 3 -

1   available to non-exempt (hourly-paid) positions as the work they performed did not require any

2   significant degree of discretion and/or independent judgment. Further, virtually all decisions

3   governing the Mud Men's work were made either by the rig operators or by following a checklist

4   of requirements as to the frequency of sampling and testing. As such, Plaintiffs contend no

5   recognized California exemption applied to any Covered Position during the relevant Class

6   Periods, entitling Plaintiffs and the Class to payment of wages for overtime work and unpaid travel

7   time, and for those working in California, pursuant to California law, compensation for non-

8   compliant meal and rest breaks. Khoury Decl. ¶18.

9       Defendant disputes the characterizations and contends that mud engineers were properly

10  classified as exempt and that, in any event, significant variances in skill, execution of job

11  responsibilities, and authority existed among the proposed Class to make class certification

12  inappropriate. Khoury Decl. ¶19. For purposes of this proposed Settlement, at a mediation with a

13  well-known wage/hour mediator, the Parties operated under the premise  that Rule 23 proposed

14  Class Members were in a better position under California law for claims than FLSA collective

15  action members, where in some individual cases, the Covered Positions have generally been

16  deemed "exempt" under federal law. This is crucial to understand in order to realize the structure of

17  the proposed Settlement.  Khoury Decl. ¶20.

18  **III.    LEGAL ANALYSIS AND ARGUMENT**

19      **A.    California Law Presumes All Employees Eligible for Overtime Pay**

20       California's overtime laws are remedial; they are to be liberally construed to protect

21  employees, and exemptions are to be narrowly construed against employers. *See*, *Morillion v.*

22  *Royal Packing Co.,* 22 Cal.4th 575, 592 (2000), quoting *Industrial Welfare Com. v. Superior*

23  *Court,* 27 Cal. 3d 690, 702 (1980); *Sav-On Drug Stores, Inc. v. Superior Court,* 34 Cal.4th 319,

24  340 (2004) (*Sav-On*). California employees are *presumed* to be non-exempt and eligible for

25  overtime pay at the requisite rate for all hours worked in excess of 8 per day and/or 40 per week.

26  An employer contending otherwise must plead and prove a specific exemption. *See*, *Ramirez v.*

27  *Yosemite Water Co.,* 20 Cal.4th 785, 795 (1999) (*Ramirez*); *Nordquist v. McGraw-Hill*

28  *Broadcasting Co.,* 32 Cal. App.4th 555, 562 (1995) (*Nordquist*). Exemptions are limited to those

- 4 -

employees who *plainly and unmistakably* fall within their terms. *See*, *Peabody v. Time Warner Cable, Inc.*, 59 Cal.4th 662 (2014) (Decision by request of Ninth Circuit, *Peabody v. Time Warner Cable, Inc.*, 689 F. 3d 1134 (9th Cir. 2012)); *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1224 (5th Cir.1990). Once an employee establishes (1) he/she is an employee and (2) he/she worked hours in excess of 8 hours per day and/or 40 hours per week without overtime pay, the burden shifts and the *employer must plead and prove* that its employees are "plainly and unmistakably" exempt. *See*, *Ramirez* at 795 and *Nordquist* at 562.

California recognizes fewer and limited exemptions than the Fair Labor Standards Act ("FLSA"), including a strict requirement that more than 50% of work time be devoted to or "primarily engaged" in exempt duties "directly related" to core employer operations and policies. *See*, *Harris v. Superior Court*, 53 Cal.4th 174, 177-182 (2011), fns. 3, 5.

In contrast to California law, federal law has continued to allow more generous allowance for exempt positions to the employer, including only 40+ hours in a work week, are entitled to overtime pay and exemptions that do not focus on what a majority of actual work time duties entail, but only primary duties, such that Defendant, at least at the trial court level, has demonstrated success on summary judgment in Texas and elsewhere, against the employees' claims.  This is also critical for the FLSA group in this proposed Settlement because they are facing acceptance of some remuneration versus no remuneration at all if Court's continue to deny claims for overtime under the FLSA exemptions. Plaintiffs and Defendant, with the assistance of a respected mediator, agreed to have a fair resolution, for FLSA and California in an effort to prevent continued piecemeal litigation throughout the United States.

## IV.   PROCEDURAL BACKGROUND AND DISCOVERY HISTORY

### A.   Litigation History

On October 18, 2012, Plaintiffs filed their complaint alleging wholesale and systematic misclassification of those persons employed in a Covered Position who were classified as "exempt" from the overtime provisions of the FLSA and/or the applicable state wage and hour laws of California. The complaint asserts claims on behalf of a collective action under the Fair Labor Standards Act ("FLSA"), pursuant to Section 16(b), 29 U.S.C. § 216(b), and putative state

- 5 -

Memorandum of Points and Authorities In Support of  Motion for Order Granting Preliminary
Approval of Class Action Settlement - Case No. 12CV01718 DAD (MJS)

law classes pursuant to Fed. R. Civ. P. 23, with attendant subclasses, for: (1) failure to pay overtime in violation of the FLSA; (2) failure to pay overtime pursuant to state law; (3) failure to pay premium wages for noncompliant meal and rest periods in violation of California Labor Code §§ 226.7 and 512; (4) failure to provide accurate wage statements in violation of California Labor Code §§ 226 and 1174; (5) failure to timely pay wages upon termination in violation of California Labor Code §§ 201-203; (6) unfair competition in violation of California Business and Professions Code § 17200; and (7) civil penalties for violation of the Labor Code Private Attorneys General Act of 2004 ("PAGA") §2699, et seq.  Khoury Decl. ¶21.

On December 7, 2012 Defendant answered the complaint by generally and specifically denying all material allegations. Khoury Decl. ¶22.

On July 8, 2013, Plaintiffs filed their motion for an order conditionally certifying this action as a representative collection action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) [Dkt. Nos. 12 through 12-6]. The Court *sua sponte* continued the hearing from August 5, 2013 to March 28, 2014 [Dkt. Nos. 13, 15, 20].  Khoury Decl. ¶23.

On February 21, 2014, Defendant filed its opposition and evidentiary objections, [Dkt. Nos. 21 through 21-3]; and Plaintiffs filed their reply on March 7, 2014 [Dkt. Nos. 22 and 23].  Khoury Decl. ¶24.

On July 30, 2014, the Court issued its Findings and Recommendation to Grant Motion for Collective Certification [Dkt. No. 30-"FR"] recommending Plaintiffs' FLSA collective action certification motion be granted. The Court further recommended within fourteen (14) days of the date of the adoption of the recommendation, Defendant was to release the contact information for all FLSA Collective Action Class Members to Plaintiffs. Khoury Decl. ¶25.

On August 31, 2014, Defendant filed an objection to the FR and requested a de novo review pursuant to 28 U.S.C. § 636 (b)(1), rejecting portions of the FR [Dkt. No. 31]. Plaintiffs responded on August 27, 2014 [Dkt. No. 32]. Khoury Decl. ¶26.

On November 26, 2014, District Court Judge Anthony Ishii issued his Order Re: Findings And Recommendations Regarding Motion To Certify Class [Dkt. No. 36] conditionally certifying the proposed FLSA collective class and ordered that: a) Plaintiffs file a proposed updated FLSA

Notice, Consent Form, and propose a third-party administrator; and b) Defendant prepare an excel class list with contact information for delivery to a third-party administrator and file notice certifying that the data set is ready. The Parties filed their updated Notices as required [Dkt. Nos. 40 and 41]. Khoury Decl. ¶27.

On February 28, 2015, the Court approved Plaintiffs proposed FLSA Notice and Consent to Join Form, as well as the third-party administrator [Dkt No. 46]. After notice of certification was provided to the Class, Plaintiff lodged the Consent to Join Forms from 168 Class Members on October 20, 2015 [Dkt. No. 52]. Khoury Decl. ¶28.

With extensions to file permitted, on March 8, 2016, Plaintiffs filed their Federal Rule of Civil Procedure Rule 23 Motion for Class Certification seeking to certify a Plaintiff Class encompassing all persons who (1) performed work for Defendant in California any time during the period from October 18, 2008 to the present; and (2) engaged in job positions titled "Drilling Fluids Specialist (DFS, Levels I-IV and DFS Senior)," "Mud Engineer," "Mud Man," "Mud Man Trainee," "DFS Consultant," and/or equivalent job titles as demonstrated by Defendant's corporate records and seven subclasses, (3) appoint Plaintiffs Sarmad Syed, Ashley Balfour and Joshua Lynd as Class and Subclass representatives and (4) appoint the law firms of Cohelan Khoury & Singer, the Blanchard Law Group, APC and the Spiro Law Corporation as lead counsel [Dkt. Nos. 62 through 62-15]. Khoury Decl. ¶29.

Plaintiffs' Rule 23 certification motion was noticed for June 10, 2016 before Magistrate Judge Seng.  The Court continued the hearing to June 21, 2016 and adjusted the briefing schedule pursuant to Local Rules [Dkt. No. 63]. Khoury Decl. ¶30.

Concurrent with the Rule 23 certification motion, Plaintiffs moved for leave to file a first amended complaint to add Joshua Lynd as a named Plaintiff and representative for the proposed California Rule 23 Class [Dkt No. 61]. The motion for leave to amend Plaintiffs' complaint was noticed for April 8, 2016 before Magistrate Judge Seng, however, the matter was continued to May 3, 2016 and assigned to be heard by Judge Drozd [Dkt. No. 64]. Khoury Decl. ¶31.

On April 7, 2016, the Parties submitted a stipulation [Dkt. No. 66] to continue the dates related to Plaintiffs' motion for leave to amend the complaint and their Rule 23 certification

1   motion, until after the Parties had had the opportunity of participating in a mediation set for

2   September 1, 2016.  On April 8, 2016, the Court granted the Parties' request [Dkt. No. 67].

3   Khoury Decl. ¶32.

4   **B.     Investigation And Discovery Conducted.**

5   Plaintiffs propounded their opening round of discovery on or about July 15, 2013, serving

6   Interrogatories and Request for Production of Documents, and noticed Defendant's Fed.R.Civ.P.

7   30(b)(6) deposition. Defendant served its responses to all outstanding discovery on October 7,

8   2013. Khoury Decl. ¶33.

9   On August 22, 2013, Defendant served each Plaintiff with separate Requests for Production

10  of Documents each Plaintiff responded to on October 22, 2013. Khoury Decl. ¶34.

11  On January 6, 2014 Class Counsel took the deposition of Defendant's Fed.R.Civ.P.

12  30(b)(6) deposition, Reginald Stanfield, the operation manager for the West Coast District.

13  Depositions were also taken of Plaintiffs Ashley Balfour and Sarmad Syed on January 7 and 8,

14  2014, respectively, and of FLSA Class Members Alan Crane and Adam Doherty on February 18

15  and 19, 2014, respectively. Khoury Decl. ¶35.

16  Upon FLSA Collective Class Certification and pursuant to Court Order [Dkt. No. 46], on

17  March 11, 2015, the third-party administrator mailed a copy of the Court-approved FLSA Notice

18  of a Collective Action and Consent to Join Form to 1,435 members of the Class.  In response, at

19  the close of the submission deadline on June 9, 2015, 168 individuals consented to join the FLSA

20  collective action [Dkt. No. 52].[5]  Khoury Decl. ¶36.

21  Plaintiffs propounded on Defendant a second set of Document Production Requests on

22  April 16, 2014, to which Defendant responded on June 6, 2014. Khoury Decl. ¶38.

23  On December 24, 2015, Plaintiffs served Defendant with a second set of Interrogatories.

24  Defendant responded on February 16, 2016. Khoury Decl. ¶39.

25  Throughout the litigation, an estimated 4,244 documents were exchanged, with 2,864 pages

26  produced by Defendant and 1,380 by Plaintiffs. These documents included Plaintiffs' personnel

27

28  [5]Of the 168 FLSA Consents to Join, 53 Class Members were California Class Members, and 115
    FLSA Class Members.  Khoury Decl. ¶37.

1  files, various job descriptions and guidelines, multiple company handbooks and policies,
2  company training manuals and materials, redacted drilling reports, emails, among other numerous
3  and relevant documents. Khoury Decl. ¶40.

4      In conjunction with Plaintiffs' Rule 23 certification motion, Plaintiffs informally
5  interviewed over 40 Class Members and ultimately obtained 17 declarations from them in support
6  of their Rule 23 certification.  In preparation for filing its opposition to the certification motion,
7  Defendant deposed four of the declarants: Jimmy Cook, Romein Hernandez-Martinez, Joshua
8  Lynd, and Cory Pruett on June 30 3016 and July 1, 2016. Khoury Decl. ¶441.

9      To allow for an informed and meaningful mediation once agreement was reached to
10 explore the possibility of a settlement, Defendant produced an excel file containing over 7,700
11 lines of data reflecting Class Member salary data and workweek information.  This information
12 and data, together with that gathered from over 80 informal Class Member interviews, declarations
13 and depositions was sufficiently quantitative to permit Plaintiffs' professional consultant to be able
14 to calculate and extrapolate Class-wide damages. Khoury Decl. ¶42.

15 **V.    MEDIATION AND SUMMARY OF PROPOSED SETTLEMENT TERMS**

16     **A.    Mediation.**  With sufficient investigation, extensive written and oral discovery,
17 research, Class Member interviews, briefing of Plaintiffs' FLSA Collective Certification and
18 Plaintiffs' FRCP Rule 23 Certification Motion, document analysis and extrapolation of damages
19 for the Class for the Class Periods**,** on September 1, 2016, the Parties attended mediation and
20 engaged in serious and informed arms'-length negotiations facilitated by Jeffrey Krivis in Encino,
21 California.  During the mediation, each side represented by its counsel, recognized the substantial
22 risk of an adverse result and agreed to a compromised settlement of this litigation.  The proposed
23 Settlement is memorialized in the Settlement Agreement and Release of Claims ("Settlement
24 Agreement") attached to the Khoury Declaration as Exhibit "1" and presented here for preliminary
25 approval. Khoury Decl. ¶43.

26     **B.    Proposed Settlement.**  The Parties have agreed (subject to and contingent upon
27 approval of this Court), that this action be settled and compromised for the Gross Settlement
28 Amount, ("GSA") of $7,000,000, which sum includes (a) attorneys' fees in an amount not to

- 9 -

1 exceed 33-1/3% of the GSA, $2,333,333; (b) litigation costs estimated at $40,000; (c) Class

2 Representative Service Payment of $15,000 for Plaintiff Ashley Balfour and of $20,000 for

3 Plaintiff Sarmad Syed in consideration of their initiation and prosecution of this action, serving as

4 representatives for the Class, work performed, and risks undertaken for the payment of costs in the

5 event the case had not concluded successfully, the substantial benefits conferred on all other

6 members of the Class, and a general release of claims; (d) claims administration expenses to CPT

7 Group, Inc., estimated at $11,500, and (e) PAGA payment to the Labor Workforce and

8 Development Agency ("LWDA") in the amount of $75,000 (75% of $100,000).  Khoury Decl. ¶44.

9      **C.     Net Settlement Amount, ("NSA")**.  After all Court-approved deductions, the NSA

10 estimated at $4,505,166.67 less employer-sided payroll taxes estimated at $213,243.27, will be

11 distributed to all Settlement Class Members, on a proportionate basis to each member Class

12 without the need to return a claim form.  No portion of the NSA will revert to Defendant under any

13 circumstances. Khoury Decl. ¶45.

14      **D.     Formula for Distribution of NSA to Participating Class Members**. Each

15 member of the Class will receive a proportionate share of the NSA based on the number of weeks

16 he worked as a FLSA Class Member or California Class Member during the relevant Class Period

17 in relation to the number of weeks worked by all members of either FLSA Class or California

18 Class during the relevant Class Period. Khoury Decl. ¶46. Based on a review of Defendant's

19 business and personnel records, there are an estimated 115 FLSA Class Members who worked an

20 estimated 6,074 weeks during the FLSA Class Period, and 353 California Class Members who

21 worked an estimated 23,880 weeks during the California Class Period. Khoury Decl. ¶47.

22      Based on foregoing formula, FLSA Class Members can expect to receive an estimated

23 **$55.23** less taxes, for each week worked during the FLSA Class Period.  If a FLSA Class Member

24 worked for the duration of the FLSA Class Period, a period of 261.4 weeks, he may expect to

25 receive **$14,437.12** less taxes. Khoury Decl. ¶48.

26      To account for the greater value of the California Class Members' claims for overtime

27 wages (one and one-half times their hourly rates), the violation of the various California Labor

28 Code claims asserted, and the additional year of damages under Business & Professions Code

§17200, the weeks worked by California Class Members were multiplied by 3.0. Based thereon, a California Class Member may expect to receive an estimated **$165.68**, less taxes, for each week worked during the California Class Period. If a California Class Member worked the entire California Class Period, a period of 423.4 weeks, he may expect to receive **$70,148.91**, less taxes. Khoury Decl. ¶49.

### E.    The Notice, No Claim Form Required and Release of Claims.

Following preliminary approval, CPT Group, Inc., the Settlement Administrator selected by the Parties, will mail to each Class Member, the Court-approved Notice of Class Action Settlement ("Notice"), Employment Information Sheet, Change of Address Form, and a pre-printed return envelope, (collectively, the "Notice Packet" – See Settlement Agreement, Exhs. A-C).  Khoury Decl. ¶50.

The Notice advises the Class (1) of their rights to participate in the Settlement, (2) that each will be mailed a Settlement Payment without a claim form, provided a current address is kept on file with the Settlement Administrator, (3) how to object to the Settlement, (4) how to opt out of the Settlement if a California Class Member, (5) how to challenge the information upon which their Settlement Payment will be based (and shown in the Employment Information Sheet); and (6) the procedures and timing for doing each of these acts. Khoury Decl. ¶51. The Notice also informs Class Members of the formula for distribution of the settlement monies, and that following final approval and the effective date of settlement, each will be mailed a Settlement Payment check representing his proportionate share of the NSA. *Id*.

The Employment Information Sheet provides the individualized work week information upon which the Settlement Payment will be calculated, the Class Members dates of employment and the estimated amount of the Settlement Payment.  California Class Members will be told that unless they return a timely request for exclusion from the Settlement, they will release the California Released Claims (Settlement Agreement, ¶ I.J.), and that upon signing and depositing the Settlement Payment check, they will have consented to join the FLSA Collective Action, and release the FLSA Released Claims (Settlement Agreement, ¶ I.T.). Khoury Decl. ¶52.

Plaintiffs' Counsel firmly believes the proposed Settlement is in the best interest of the

- 11 -

Class based on the negotiations and a detailed knowledge of the issues present in this action. The length and risks of trial and other normal perils of litigation that affect the value of the claims were all weighed in reaching the proposed Settlement. In addition, the defenses argued by M-I Swaco, the prospect of this matter not proceeding as a class action or representative PAGA action, an unfavorable ruling on Plaintiffs' certification motion (pending at the time this matter was mediated), an adverse summary judgment ruling, the difficulties of complex litigation, the lengthy process of establishing specific damages and various possible delays and uncertainty regarding the outcome of appeals, were also carefully considered by Class Counsel in agreeing to the proposed Settlement. Khoury Decl. ¶53. Plaintiffs' Counsel contend that the Settlement is exceptional, providing Settlement Payments potentially paying as much as $70,148 to California Class Members and as much as $14,437 to a FLSA Class Member. *Id.*

M-I Swaco has denied and continues to deny any liability or wrongdoing of any kind associated with the claims alleged in this Action, disputes the wages, damages and penalties claimed by the Plaintiffs and Class Representatives, and further contends that, for any purpose other than settlement, the Action is not appropriate for class or representative action treatment. M-I Swaco contends, among other things, it has complied with FLSA laws and the California Labor Code, the Industrial Wage Commission Orders, and the California Business & Professions Code at all relevant times. Khoury Decl. ¶54.

## VII.   THE COURT SHOULD PRELIMINARILY APPROVE THE CLASS ACTION SETTLEMENT AND SET A FINAL FAIRNESS HEARING DATE

### A.   Class Action Settlements are Subject to Court Review and Approval Under the Federal Rules of Civil Procedure.

A class action may not be dismissed, compromised, or settled without the approval of the Court. FRCP Rule 23(e). The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *Dunleavy v. Nadler,* 213 F.3d 454, 458 (9th Cir.2000) (citing *Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1238 (9th Cir. 1998)). Judicial proceedings under FRCP Rule 23 have led to a defined procedure and specific criteria for class action approval. The Rule 23(e) settlement approval procedure includes three distinct steps:  (1) preliminary approval of the proposed Settlement; (2) dissemination of a notice of the settlement to all affected class

- 12 -

1  members; and (3) a formal fairness hearing at which class members may be heard regarding the

2  Settlement, and at which counsel may introduce evidence and present argument concerning the

3  fairness, adequacy, and reasonableness of the Settlement. *Whitford v. First Nationwide Bank*, 147

4  F.R.D. 135, 137 (W.D. Ky. 1992);

5       This procedure safeguards Class Members' due process rights and enables the Court to

6  fulfill its role as the guardian of class interests. *See Alba Conte & Herbert Newberg, 4 Newberg on*

7  *Class Actions* (2002) ("*Newberg*"), §§ 11.22, *et seq*. By way of this motion, Plaintiffs request the

8  Court take the first step in the Settlement process and preliminarily approve the proposed

9  Settlement. The purpose of the Court's preliminary evaluation of the proposed Settlement is to

10  determine whether it is within the "range of reasonableness," and thus whether notice to the Class

11  and a formal fairness hearing are appropriate. *See Newberg* § 11.25. The *Manual for Complex*

12  *Litigation* (Fourth) (2004) *("Manual")* characterizes the preliminary approval state as an "initial

13  evaluation" of the fairness of the proposed settlement made by the Court on the basis of written

14  submissions and informal presentation from the settlement parties. *Manual* § 21.632.

15       At this stage, the Court is not making a final determination on whether the settlement is fair,

16  reasonable, and adequate, as is ultimately required by FRCP Rule 23(e).  Rather, the Court need

17  only decide whether the settlement "appears to fall within the range of possible approval."

18  *Armstrong v. Bd. of Sch. Directors*, 616 F.2d 305, 314 (7th Cir. 1980), overruled on other grounds

19  by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Berry v. School Dist. of City of Benton*

20  *Harbor*, 184 F.R.D. 93, 97 (W.D. Mich. 1998) (the court first must determine "whether the

21  proposed settlement is potentially approvable"); *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F.

22  Supp. 1379, 1384 (D. Md. 1983) (likening preliminary approval to a finding that there is "probable

23  cause" to submit the settlement to the class and to hold a full-scale final approval hearing);

24  *Newberg* § 11.25.

25       Courts must give "proper deference" to settlement agreements, because "the court's

26  intrusion upon what is otherwise a private consensual agreement negotiated between the parties to

27  a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement

28  is not the product of fraud or overreaching by, or collusion between the negotiating parties, and the

- 13 -

Memorandum of Points and Authorities In Support of  Motion for Order Granting Preliminary
Approval of Class Action Settlement - Case No. 12CV01718 DAD (MJS)

1    settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler*

2    *Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988) (quotations omitted.)

3         **B.      The Proposed Settlement is Fair, Adequate and Reasonable**.

4         The Court's determination of whether a proposed settlement is fair, adequate, and

5    reasonable is often said to require a balancing of several factors. These factors may include, among

6    others: "the strength of plaintiff's case; the risk, expense, complexity, and the likely duration of

7    further litigation; the risk of maintaining class action status throughout the trial; the amount offered

8    in settlement; the extent of discovery completed, and the stage of the proceedings; the experience

9    and views of counsel; the presence of a governmental participant; and the reaction of the class

10   members to the proposed settlement.' This list is not exclusive and different factors may

11   predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 13785

12   (9th Cir. 1993) (citation omitted.) A discussion of these factors support the conclusion that the

13   proposed Settlement is indeed "fair, adequate and reasonable." Further, the law favors settlement,

14   particularly in class actions and other complex cases where substantial resources can be conserved

15   by avoiding the time, cost, and rigors of formal litigation. *See Class Plaintiffs v. City of Seattle,* 955

16   F.2d 1268, 1275 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

17        **1.      Strength of Plaintiffs' Case and the Risk, Expense, Complexity and Likely
                    Duration of Further Litigation.**
18

19        While Plaintiffs believe in the merits of their case, they also recognize the inherent risks

20   and uncertainty of litigation and understand the benefits of providing significant settlement

21   payments to the Class now as opposed to risking (i) the Court's denial of certification of their Rule

22   23 proposed Class; and (ii) an unfavorable result on the merits on summary judgment or at trial

23   and/or on an appeal, a process that can take several more years to litigate. Plaintiffs' claims involve

24   complex and disputed legal issues and fact-specific arguments that the Parties have been litigated

25   fiercely since inception of the action. Plaintiffs firmly believe in the strength of their claims, but M-

26   I Swaco also has strong defenses to liability and certification. And, even if certification were

27   granted, there would be significant risks to Plaintiffs' ability to maintain that certification.  Khoury

28   Decl. ¶55.

Defendant presented significant defenses and good faith objections to Plaintiffs' ability to obtain Rule 23 certification, maintaining that the claims are inappropriate for class treatment due to variations among the work duties and demands of the varied oil company clients that class members worked with and generally determined how much or how little break time or sleep time was permitted. Khoury Decl. ¶56. Further, there was some degree of variation as to the amount of testing performed, some of which was done based purely on contract (such as twice per 24-hour period, versus some more complicated geography where additional monitoring and testing of fluid was required.) While the testing itself was generally automated, the geography could vary, and depending on how much weight was placed on such variations, it presented serious risks to certification. There was also some evidence of the use of pairs of Mud Men employees wherein the senior employee was both trainer and mentor to less experienced Mud Men employees, and on some rigs that meant that only the less-experienced employee was able to take break periods and sleep time as the rig operators were generally hesitant to accept junior recommendations without confirmation from a more senior Mud Man.  Finally, while there are substantial records, actually retracing work time on the rig versus off the rig posed a substantial forensic challenge such that even assuming a potential class-wide misclassification of the Mud Men positions, reassembling the potential amount of overtime recovery would have required significant expert oriented work and statistical analysis just to obtain a fair and just (and admissible) amount of damage recovery. As such, Defendant contends, Rule 23 certification would be inappropriate. Khoury Decl. ¶57. Defendant also asserts that the obstacles faced by Plaintiff in seeking Rule 23 certification and maintaining that certification are all the greater given the United States Supreme Court's rulings in *Dukes v Wal-Mart, Inc.*, 131 S. Ct. 2541 (2011) and *Comcast Corp. v. Behrend*, 133 S. Ct.1426 (2013).   As a result of *Dukes* and *Comcast*, along with many other cases, Defendant believes Plaintiffs will not be able to obtain certification outside of the Settlement context. Defendant further contends *Dukes* explicitly disapproved the use of sampling and surveys to determine class-wide practices, and *Comcast* overturned a certification ruling based on the named representative's failure to identify a reliable damages model that could be used on a class-wide basis. *Dukes*, 131 S. Ct. 15 2561; *Comcast*, 133 S. Ct. at 1432-33. Thus, while Plaintiff believes and continues to believe this is a strong case for Rule 23 certification, there is always a risk and enormous expense

- 15 -

associated with class certification proceedings.  Similarly, while Defendant believes Plaintiffs will face several steep hurdles going forward should this matter not resolve, it is also mindful that there are risks and significant expenses associated with proceeding further in the case.

**2.      The Extent of Discovery and Stage of the Proceedings Support the Settlement**

The proposed Settlement is the product of substantial effort by the Parties set forth above in Section IV. Plaintiffs' investigation of the facts and claims was robust with written discovery exchanged and depositions taken as well as having informally interviewed dozens of putative Class Members, obtaining declarations in support of Plaintiffs' Rule 23 Certification motion, and evaluating the significant amounts of data and documents produced through discovery as well as that production of pay data and weeks worked under the umbrella of mediation confidentiality, once an agreement to mediate had been reached.  Khoury Decl. ¶58.

Prior to attending mediation, the Parties thoroughly investigated and evaluated the factual strengths and weaknesses of this case and engaged in sufficient investigation and discovery reflected in Section IV to support the Settlement. Khoury Decl. ¶59. Thus, the Settlement before this Court came only after the case was fully investigated by Counsel. This litigation, therefore, has reached the stage where the Parties have a clear view of the strengths and weaknesses of their cases sufficient to support the Settlement. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

**3.      The Settlement is the Product of Serious, Informed and Non-Collusive Negotiations and Is a Reasonable Compromise of Claims**

The Settlement was reached as a result of the arms'-length negotiations facilitated by an experienced, well-respected mediator. Following agreement to a settlement in concept, the Parties have worked diligently and in earnest to reach agreement on all terms of the proposed Settlement. Khoury Decl. ¶60. Though cordial and professional, the settlement negotiations have been, at all times, adversarial and non-collusive in nature. *Id.* Continued good faith, but occasionally contentious, negotiations were required to reach agreement on all terms set forth in the Settlement Agreement presented here for preliminary approval. The compromise reached is reasonable. *Id.*

1       The Gross Settlement Amount is an extraordinary recovery for the Class, who will be

2   receiving either an estimated $55.23 for each worked as a FLSA Class Member, or an estimated

3   $165.68 for each week worked as a California Class Member. Class Counsel relied upon the

4   extensive information and documentation produced through formal discovery, depositions taken,

5   information obtained from over 80 members of the Class by way of informal interviews inquiring

6   about their work duties, hours worked daily and bi-weekly, wages paid, etc. From all information

7   acquired through formal and informal discovery, once agreement to mediate was reached, Class

8   Counsel was permitted to extrapolate class-wide damages for the FLSA and California Class

9   members. Khoury Decl. ¶61.

10       Plaintiffs' valuation of Class damages were subject to significant consideration of a recent

11   federal district Court summary judgment ruling granted in favor of MI SWACO finding that "mud

12   men" were properly classified as exempt. *Dewan v. MI, LLC*, 2016 WL 6957178 (issued February

13   22, 2016; United States District Court, S.D., Texas). Khoury Decl. ¶62.

14       Based upon the dozens of informal interviews with Class Members, for purposes of

15   Settlement discussions at mediation, Plaintiffs were able to extrapolate an average of

16   approximately 20 – 40 hours weekly overtime hours worked by both the FSLA and Rule 23

17   Classes. Khoury Decl. ¶63.

18       After engaging in over 80 interviews and assessing a multitude of declarations from

19   putative Class Members, Plaintiffs were able to assemble a mean and average overtime rate, and

20   using such averages, Class Counsel assess upper-end overtime exposure for both the FSLA class

21   and for the Rule 23 California class. This was extrapolated into a global overtime demand of

22   $32,000,000 for Class Members, with only minor discounting.  The amount, of course, was also

23   dependent in part on differences in rest-time calculations, allowable under the FLSA and "subject

24   to employer control" issues that impact whether the rest-time was compensable under California's

25   more stringent overtime laws. Khoury Decl. ¶64. Calculation of appropriate overtime rates were

26   based upon both California overtime rules and FSLA rules, (wherein federal law provides a

27   substantially less per hour recovery than the California workweeks given the ability to receive an

28   overtime rate of time-and-a-half (1.5x) for each hour over 40 worked in California versus only a .5

times multiplier under the FLSA. Khoury Decl. ¶65. More contested damages were also derived from Plaintiffs' claims for wages due for "on call" hours during which Class Members slept. During multiple Class Member interviews, irrespective of sleep-time issues, most did not believe their claims for sleep were compensable, irrespective of the law as to whether it constituted or did not constitute hours worked, either under California law or federal law. Khoury Decl. ¶66. Based on this data, Plaintiffs' counsel deemed it necessary to discount this time as a solid majority of Class Members did not believe it appropriate to pursue to a trial for sleep time hours on the rig. Whether right or wrong, they believed that rest time was not compensable and accepted Mud Men positions on that basis. Assuming trial, Class Counsel was required to take this data into account on resolution and a significant drawback on potential damages. During a few Class Member depositions taken by Defendant, deponents were consistent that as long as they actually received "sleep time" they did not believe that the company should pay for it. Accordingly, Class Counsel did not believe that using a "pie in the sky" exposure data point was appropriate for damage assessment and valuation, even if, as a technical matter, California Class Members might be entitled to such time on an overtime basis if the Court or trier fact determined they were continuously subject to employer control. Khoury Decl. ¶67.

Based on the data exchanged, pay and work week information, the proposed non-reversionary Settlement of $7,000,000 is approximately 35% of the major class overtime claims. This percentage is reasonable in light of the risks of obtaining an unfavorable decision on Rule 23 certification and maintaining certification through trial, summary judgment or at trial. This also reflects rational discounting related to recent adverse decisions involving similarly employed workers. Khoury Decl. ¶68.

The estimated liability exposure does not include all potential penalties, as such claims require willfulness and/or injury, and as the award of penalties is discretionary with the Court, the assessment of such damages can be speculative. Khoury Decl. ¶69. Defendant's exposure was further discounted because certain derivative claims are also entitled to a good faith defense and subjected to a knowing and intentional standard of proof in order to recover, i.e., Labor Code §§ 203 and 226.  Khoury Decl. ¶70.

PAGA penalties would be subject to judicial discretion and, of course, a liability determination in favor of the employees with respect to the policies and practices employed by Defendant. Further, the trial methodology of PAGA cases continues to develop and is uncertain. Defendant's position is that should this action be tried as a PAGA representative action, it would be unmanageable and involve a multitude of thousands upon thousands of individual issues. Penalty calculations for alleged PAGA penalty claims although substantial would be subject to judicial discretion and are not mandatory. PAGA penalties if awarded would require 75% of any award to be paid to the State of California. Fortunately, as a result of the mediated Settlement, a class action resolution was accomplished which will provide substantially more benefits to the Class. Khoury Decl. ¶71. The amendments to PAGA in July 2016 further add to uncertainty, particularly for actions filed long before the amendments.  The bottom line is that the Class and the Collective Action participants are receiving value for strongly contested claims, and the PAGA statute, while a valuable tool for California Class Members, leaves most of the nature and extent of recovery, if any, up to the Court, a safeguard already preserved in both FLSA and Rule 23 class action cases. From Class Counsel's perspective, given the ups-and-downs of such cases over the last several years, the proposed Settlement is a solid settlement for which we believe there will considerable and substantial approval among the FLSA and the California Class Members. Khoury Decl. ¶72.

Overall, and in face of these uncertainties, the Parties agreed to a compromise non-reversionary settlement of $7,000,000 for the 433 Class Members. A settlement is not judged *solely* against what might have been recovered had plaintiff prevailed at trial, nor does the settlement have to provide 100% of the damages sought to be fair and reasonable. *Linney v. Cellular Alaska Partnership,* 151 F. 3d 1234, 1242 (9th Cir. 1998); *In re Mego Fin. Corp. Sec. Litig.,* 213 F. 3d 454, 459 (9th Cir. 2000). The adequacy of the amount recovered must be judged as "a yielding of absolutes. . . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation . . ." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th  Cir. 1982) (citation omitted), "It is well-settled law that a cash settlement amounting to

- 19 -

1  only a fraction of the potential recovery does not . . . render the settlement inadequate or unfair",

2  "*Officers for Justice v. Civil Serv. Comm'n* (9th Cir. 1982) at 628; see also *In re Omnivision*

3  *Technologies, Inc*. (N.D. Cal. 2007) 2007 U.S. Dist LEXIS 95616, at p. 21, noting that certainty of

4  recovery in settlement of 6% of maximum potential recovery after reduction for attorney's fees was

5  higher than median percentage for recoveries in shareholder class action settlements, averaging

6  2.2%-3% from 2002 through 2006.)   Accordingly, the proposed Settlement is not to be judged

7  against a speculative measure of what might have been achieved.   *Linney v. Cellular Alaska*

8  *Partnership, supra.*

9          In light of all the information provided above, the proposed Settlement reflects an excellent

10  recovery for the Class and is well within the "ballpark" of reasonableness and should be granted

11  preliminary approval. Khoury Decl. ¶73.

12  **VIII.   Class Counsels' Attorneys' Fees Request and Class Representative Service Payment.**

13          **A.   Motion for Award of Attorneys' Fees and Litigation Costs**.

14          Class Counsels' attorneys' fees and litigation costs incurred pursuing the litigation of this

15  action will also be paid from the GSA.  Class Counsel will file a motion requesting reimbursement

16  of their litigation expenses of up to $40,000 and an award of fees of up to $2,333,333.33 (one-third

17  of the GSA). The motion for attorneys' fees and costs will detail the hours expended and the

18  litigation expenses advanced.  Khoury Decl. ¶74.

19          **B.   Class Representative Service Payment to the Named Plaintiffs.**

20          According to the Ninth Circuit, "...named plaintiffs ... are eligible for reasonable incentive

21  payments. The district court must evaluate their awards individually, using 'relevant factors

22  including the actions the plaintiff has taken to protect the interests of the class, the degree to which

23  the class had benefitted from those actions, the amount of time and effort the plaintiff in pursuing

24  the litigation and reasonable fears of workplace retaliation.'"   *Staton v. Boeing Corp.,* 327 F.3d

25  938, 977 (9th Cir. 2003) [citations and internal alterations omitted].

26          Subject to the Court's approval at the time of the final fairness hearing, Class Counsel will

27  request on behalf of Plaintiff Syed the sum of $20,000 and on behalf of Plaintiff Balfour the sum of

28  $15,000 for their time, effort, risks undertaken for the payment of costs in the event this action had

- 20 -

Memorandum of Points and Authorities In Support of  Motion for Order Granting Preliminary
Approval of Class Action Settlement - Case No. 12CV01718 DAD (MJS)

1   been unsuccessful, and stigma upon future employment opportunities for having initiated this

2   action against a former employer, and general releases of all claims related to their employment.

3   The requested service payment is fair and reasonable because each was instrumental in this

4   litigation and in achieving an extraordinary result for each member of the Class in this case.

5   Plaintiffs have invested a great deal of personal time and effort into the investigation, prosecution,

6   and the settlement of the case, provided deposition testimony, and written responses to written

7   discovery and production of documents, as will be set forth in each of their declarations to be filed

8   in conjunction with the motion for final approval of class action settlement and motion for award of

9   attorneys' fees, litigation costs, and administration expenses. The Class Representative service

10  payment requests for each is fair and reasonable. Khoury Decl. ¶75. See, e.g., *Singer v. Becton*

11  *Dickinson & Co.,* 2010 U.S. Dist. LEXIS 53416 at \*24-26 (S.D. Cal. June 1, 2010) ("The $25,000

12  incentive award is ... well within the acceptable range awarded in similar cases."]; discussing,

13  *Brotherton v. Cleveland*, 141 F. supp. 2d 907, 913-14 (S.D. Ohio 2001) (approving $50,000 class

14  representative payment to named plaintiff]; and *Van Vranken v. Atlantic Richfield Co*., 901 F.

15  Supp. 294, 299 (N.D. Cal. 1995) (same); *Glass v. UBS Financial Services*, 2007 U.S. Dist. LEXIS

16  8476, 50-52 (N.D. Cal. Jan. 26, 2007) (per Chesney, J.; approving $25,000 class representative

17  payment].

18  **IX.   THE PROPOSED RULE 23 CLASS SHOULD BE CONDITIONALLY CERTIFIED.**

19         **A.   All Rule 23(a) Prerequisites Certification Are Present.**

20         For purposes of the proposed Settlement, Plaintiffs request the Court to provisionally

21  certify the Rule 23 California Class defined as "All persons employed by Defendant in the State of

22  California in any one or more of the Covered Positions[6] at any time during the period from October

23  18, 2008 through November 30, 2016."  Khoury Decl. ¶76. The Court has the authority to certify a

24  provisional settlement class at the time of preliminary approval. *See Amchem Prods., Inc. v.*

25  *Windsor*, 521 U.S. 591, 620 (1997).  In determining whether a class should be certified, the court is

26  bound to take the substantive allegations of the complaint as true.  *See Blackie v. Barrack*, 524

27  ────────────────

28  [6]A list of the Covered Positions is Attachment 1 to the Settlement Agreement, as well as to the
    proposed Notice of Class Action Settlement. Khoury Decl. ¶77.

F.23d 891, 901 n.17 (9th Cir. 1975). A proposed settlement class is still subject to the requirements of FRCP Rule 23(a) and (b) which are "designed to protect absentees by blocking unwarranted or overbroad class definitions." *Amchem*, 521 U.S. at 620.  However, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Id.*

### 1.    Rule 23(a)(1) —Numerosity

There are an estimated 353 putative California Class Members. Khoury Decl. ¶78. A putative class of 353 satisfies the Rule 23(a)(1) numerosity element in the settlement context, 5 James Wm. Moore et al., *Moore's Federal Practice*, § 23.22 (3d ed. 1999).

### 2.    Rule 23(a)(2) —Commonality

The commonality preconditions of Rule 23(a)(2) are "construed permissively." *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998). The presence of simply one common issue whose resolution will affect all or significant number of the putative class members suffices to satisfy the commonality requirement. *See James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001). Here, Plaintiffs allege Defendant implemented and applied uniform employment policies and practices which classified all Mud Men personnel as exempt from the requirements of overtime compensation. For settlement purposes, Plaintiffs' claims meet the minimum burden of establishing commonality.  Khoury Decl. ¶79.

### 3.    Rule 23(a)(3) —Typicality

Under this Rule's "permissive standards," the representative Plaintiffs' claims are "typical" if they are "reasonably co-extensive with those of absent class members." *Hanlon,* 150 F.3d at 1020. The typicality requirement is satisfied if Plaintiffs' claims arise from the same events or course of conduct that give rise to the claims of other class members and are based on the same legal theory.  *See Ventura v. New York City Health and Hosp., Inc.*, 125 F.R.D. 595, 600 (S.D.N.Y. 1989). Plaintiffs contend their claims arise from a common source—M-I Swaco's policy and practice of exempting from the requirements of overtime compensation all persons employed in a Covered Position at any time during the Class Period.  Furthermore, the claims of Plaintiffs and the

- 22 -

putative Class are based on identical legal theories. Finally, Plaintiffs' interests are aligned with those of the putative Class. Khoury Decl. ¶80. Based on the foregoing, the typicality requirement is also satisfied in the settlement context. *Id.*

### 4.   Rule 23(a)(4) —Adequacy of Representation

Adequacy requirements are established on the basis that the proposed Class Representatives have no conflict of interest with other Class Members and are represented by qualified counsel. *Hanlon*, *supra,* 150 F.3d at 1020. Khoury Decl. ¶81. Plaintiffs' counsel are well-situated to assume the responsibilities of Class Counsel because they are experienced employment and class action litigators who are fully qualified to pursue the interests of the Class. Khoury Decl. ¶82. They are adequate class counsel under Rule 23(a)(4) and meet the criteria for fairly and adequately representing the class under Rule 23(g)(1).

### B.   Rule 23(b)(3) —Predominance and Superiority

The predominance inquiry focuses on the relationship between the common and individual issues, testing whether the proposed classes are sufficiently cohesive to warrant adjudication by representation. *See Amchem Products, Inc.,* 521 U.S. at 623.  Plaintiffs contend several questions of law and fact are common to their claims and to those of the putative Class and provide a justification for handling the dispute on a representative rather than on an individual basis for settlement purposes. *Id.*  Class treatment is also the superior method for resolving all claims in this case because a class action would (1) accomplish judicial economy by avoiding multiple suits, and (2) protect the rights of persons who might not be able to present claims on an individual basis. *See generally Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345 (1983).  This is true in the settlement context, because the Court need not consider the manageability (or lack thereof) of a trial.

Thus, Plaintiffs contend adjudication (and resolution by virtue of the proposed Settlement) of these common issues, which Plaintiffs claim represent significant aspects of this case, would serve to adjudicate (and resolve) substantially all of the issues affecting the entire Class.  Based on the foregoing, Plaintiffs respectfully request that the Court conditionally certify the California Rule 23 Class for Settlement purposes only.  Khoury Decl. ¶83.

///

Memorandum of Points and Authorities In Support of  Motion for Order Granting Preliminary
Approval of Class Action Settlement - Case No. 12CV01718 DAD (MJS)

### C.    PAGA Penalty Claims

The settlement of the claim for penalties under the Labor Code's Private General Act of 2004, as amended ("PAGA") for civil penalties in the sum of $75,000, 75%, of $100,000, will be paid to the Labor Workforce Development Agency ("LWDA") and $25,000 will be paid to the Class, is reasonable and appropriate under the circumstances. The Parties negotiated a good faith amount for PAGA penalties to be paid to the LWDA and to the Class. The $75,000 portion to be paid to the LWDA was not the result of self-interest at the expense of other Class Members. Khoury Decl. ¶84. Where settlements "negotiate[] a good faith amount" for PAGA penalties and "there is no indication that this amount was the result of self-interest at the expense of other Class Members," such amounts are generally considered reasonable. *Hopson v. Hanesbrands Inc*., No. CV-08-0844 EDL, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009). The amount to be paid to the LWDA comports with PAGA settlement amounts approved by the courts. Khoury Decl.¶85. See, e.g., *Hopson v. Hanesbrands Inc., No*. CV-08-0844 EDL, 2008 WL 3385452, at *1 (N.D. Cal. Aug. 8, 2008) (approving a PAGA settlement of 0.3% or $1,500); *Garcia v. Gordon Trucking, Inc.,* No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575, at *3 (E.D. Cal. Oct. 31, 2012) (approving a PAGA settlement of 0.27%); *Villacres v. ABM Indus. Inc*., 189 Cal. App. 4th 562 (2010), review denied (Feb. 16, 2011) (PAGA claims may be settled without any money allocated to those claims).

## X.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approve of the proposed Settlement, grant conditional certification pursuant to FRCP Rule 23 for settlement purposes only, appoint Plaintiffs as the Class Representatives, appoint Plaintiffs'

///

///

///

///

///

///

Memorandum of Points and Authorities In Support of  Motion for Order Granting Preliminary
Approval of Class Action Settlement - Case No. 12CV01718 DAD (MJS)

1 | attorneys as Class Counsel, approve as to form the proposed Notice to the Settlement Classes,

2 | appoint CPT Group, Inc., as the Settlement Administrator, and to set a final approval hearing date.

3 | Respectfully submitted,

4 |

5 | Dated:  December 21, 2016                **COHELAN KHOURY & SINGER**

6 |                                           By  s/ Diana M. Khoury

7 |                                              Diana M. Khoury / Isam C. Khoury / J. Jason Hill
                                              Attorneys for Plaintiffs

8 |                                           SARMAD SYED and ASHLEY BALFOUR
                                           And the all similarly situated individuals.

Memorandum of Points and Authorities In Support of  Motion for Order Granting Preliminary
Approval of Class Action Settlement - Case No. 12CV01718 DAD (MJS)