1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 | SARMAD SYED and ASHLEY                    No.  1:12-cv-01718-DAD-MJS
     BALFOUR, individually, and on behalf of
12 | all others similarly situated,

13 |            Plaintiffs,                     ORDER GRANTING PLAINTIFF'S MOTION
                                               FOR PRELIMINARY APPROVAL OF
14 |      v.                                    CLASS ACTION SETTLEMENT AND
                                               PRELIMINARY CLASS CERTIFICATION
15 | M-I, L.L.C., a Delaware limited liability
     company, doing business as M-I SWACO;    (Doc. No. 76.)
16 | and DOES 1 through 10, inclusive,

17 |            Defendants.

18

19          On December 21, 2016, plaintiffs filed a motion for order granting preliminary approval

20  of class action settlement.  (Doc. No. 76.)  The motion is unopposed and came before the court

21  for hearing on February 7, 2017.  (Doc. No. 79.)  Attorneys Jeff Holmes, James Hill, and Diana

22  Khoury appeared telephonically on behalf of plaintiffs.  Attorneys Jason Mills and Joseph Marra

23  appeared telephonically on behalf of defendants.  Oral argument was heard and the motion was

24  taken under submission.  (*Id*.)  With leave of court, on February 14, 2017, plaintiffs' counsel filed

25  additional briefing addressing issues raised by the court at the hearing.  (Doc. No. 80.)  For the

26  reasons discussed below, the court will grant the pending motion.

27  /////

28  /////

                                              1

FACTUAL BACKGROUND

On October 18, 2012, plaintiffs Sarmad Syed and Ashley Balfour, individually and on behalf of all others similarly situated, brought this action against defendant M-I, L.L.C., doing business as M-I SWACO, ("M-I SWACO") as a collective class action under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, ("FLSA") for failure to pay overtime and minimum wages and as a putative class action under Federal Rule of Civil Procedure ("Rule") 23 for the California state law claims of 1) failure to pay minimum wages; 2) failure to pay overtime wages; 3) failure to provide meal periods under Labor Code §§ 226.7 and 512; 4) failure to provide rest breaks under Labor Code §§ 226.7 and 512; 5) failure to furnish itemized wage statements; 6) failure to pay wages timely upon termination; 7) unfair competition; and 8) penalties pursuant to Labor Code § 2699 (the "California Class").  (Doc. No. 1.)

Plaintiffs' complaint alleges as follows.  Defendant M-I SWACO is a corporation that employees more than 13,000 individuals in more than 75 countries around the world providing services and products related to drilling for hydrocarbons.  (Doc. No. 1 at 5.)  Plaintiffs and other similarly situated employees were employed by defendants as "mud engineers."  (*Id.* at 6.)  Plaintiffs allege that, during their employment, defendant failed to pay them at the legally required time-and-a-half rates for work in excess of forty hours per week, failed to keep records, failed to pay them at overtime rates or at all for overtime work, required them to work during meal periods without compensation, deprived them of rest periods, failed to timely furnish accurate wage statements, and failed to timely pay all wages due.  (*Id.* at 12–25.)

On November 26, 2014, the court conditionally certified a FLSA class consisting of:

> All persons who were or are employed by Defendant, on or after August 5, 2010 (the "FLSA Class Period"), in the job position known as drilling fluids specialist ("DFS"), "mud engineer," "mud man," "mud man trainee," or "consultant mud man," or equivalent titles (the "FLSA Collective Plaintiffs").

(Doc. No. 36 at 15.)  On March 8, 2016, plaintiffs filed a motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.  (Doc. No. 62.)  However, the court never ruled on that motion because plaintiffs filed a notice of settlement on September 9, 2016.  (Doc. No. 68.)  The settlement was the result of a mediation facilitated by Jeffrey Krivis on September 1,

1  2016 in Encino, California.  (Doc. No. 76-2 at 14.)

2          The proposed settlement agreement defines the "FLSA Collective Action Class" as "the

3  115 individuals employed by Defendant in a Covered Position during the period from November

4  26, 2011 through November 30, 2016, who previously consented to join the Federal Labor

5  Standards Act Collective Action, pursuant to Section 16(b), 29 U.S.C. § 216(b), ("FLSA") and

6  who have not performed work for Defendant in California during that time period."  (*Id*. at 26.)

7  The "California Rule 23 Class Member(s)" or "California Class" is defined as "all persons

8  employed by Defendant in California in a Covered Position at any time during the period from

9  October 18, 2008 through November 30, 2016.  There are an estimated 353 members in this

10  group, which includes current and former employees who performed work for Defendant solely

11  in California, as well as employees who performed work for Defendant both in California as well

12  as outside of California."  (*Id*.)  "Covered Position" means "a drilling fluid specialist, mud

13  engineer, mud man, mud man trainee, or consultant mud man, or equivalent title, as enumerated

14  in Appendix No. 1 to this Agreement."  (*Id*. at 28.)  Based upon a review of defendant's business

15  and personnel records, there are 115 FLSA collective class members who had an estimated 6,074

16  weeks worked during the FLSA class period and 353 California Rule 23 class members who had

17  an estimated 23,880 weeks worked during the California class period.  (*Id*. at 35.)

18          Under the proposed settlement agreement, defendants will make a gross payment of

19  $7,000,000.  (Doc. No. 76-2 at 35.)  This amount is non-reversionary with no portion reverting to

20  defendant.  (*Id*. at 29.)  The agreement provides the following allocation of that payment: (i)

21  attorneys' fees of not more than one third, or $2,333,333.33, to be paid to class counsel; (ii)

22  estimated litigation expenses of up to $40,000 to be paid to class counsel; (iii) estimated

23  settlement administration costs of $11,500 to be paid to the administrator CPT Group, Inc.; (iv)

24  class representative fees of $20,000 to be paid to plaintiff Sarmad Syed and $15,000 to plaintiff

25  Ashley Balfour; (v) penalties of $100,000 under the California Private Attorney's General Act of

26  2004, as amended (the "PAGA"), with 75% of that ($75,000) to be paid to the Labor and

27  Workforce Development Agency in settlement of the PAGA claim; and (vi) the net settlement

28  amount estimated at $4,505,166.67, less employer-sided taxes estimated at $213,243.27, to be

1    distributed to the class members, with California class members receiving an estimated $165.68,

2    less taxes, for each week worked during the California class period and FLSA class members

3    receiving $55.23, less taxes, for each week worked during the FLSA class period. (*Id.* at 36–39.)[1]

4         If the court awards less than the amounts requested by class counsel for attorneys' fees

5    and/or costs, the difference shall become part of the net settlement amount to be distributed to

6    class members. (*Id.* at 38.) Class members must return requests for exclusion to be excluded

7    from the settlement but will not be required to return a claim form to receive payment. (*Id.* at 37.)

8    All unclaimed shares will be reallocated to participating class members on a proportionate basis.

9    (*Id.*) The funds with respect to settlement payment checks that are uncashed ninety-five days

10   after being mailed will be paid to the California Industrial Relations Unclaimed Wages Fund for

11   the California class members and to Workplace Fairness for the FLSA class members. (*Id.* at 47.)

12        As noted at the outset, on December 21, 2016, plaintiffs filed the instant unopposed

13   motion for preliminary approval of class action settlement. (Doc. No. 76.) Plaintiffs seek an

14   order: (i) continuing certification of the FLSA class as a collective action under § 216(b) of the

15   FLSA; (ii) provisionally certifying the California Class pursuant to Rule 23; (iii) appointing

16   plaintiffs' attorneys as class counsel; (iv) appointing the named plaintiffs as the class

17   representatives; (v) appointing CPT Group Class Action Administrators, Inc. ("CPT") as the

18   settlement administrator; (vi) setting a date for the final fairness and approval hearing should

19   preliminary approval be granted. (Doc. No. 76-1 at 9.)

20                          LEGAL STANDARD

21        "Courts have long recognized that settlement class actions present unique due process

22   concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935,

23   946 (9th Cir. 2011) (citation and internal quotations omitted). To protect the rights of absent

24   class members, Rule 23(e) of the Federal Rules of Civil Procedure requires that the court approve

25   all class action settlements "only after a hearing and on finding that it is fair, reasonable, and

26

27   ─────────────────
     [1] For a FLSA class member who worked the entire FLSA class period, this would amount to a
     payment of $14,437.12 less taxes. For a California class member who worked the entire
28   California class period, this would amount to a payment of $70,148.91. (Doc. No. 76-2 at 15.)

adequate." Fed. R. Civ. P. 23(e)(2); *Bluetooth*, 654 F.3d at 946.  However, it has been recognized that when parties seek approval of a settlement agreement negotiated prior to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *Bluetooth*, 654 F.3d at 946.  Thus, the court must review such agreements with "a more probing inquiry" for evidence of collusion or other conflicts of interest than what is normally required under the Federal Rules. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

When parties seek class certification only for purposes of settlement, Rule 23 "demand[s] undiluted, even heightened, attention" to the certification requirements. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  The district court must examine the propriety of certification under Rule 23 both at this preliminary stage and at a later fairness hearing. *See, e.g.*, *Ogbuehi v. Comcast*, 303 F.R.D. 337, 344 (E.D. Cal. Oct. 2, 2014); *West v. Circle K Stores, Inc.*, No. 2:04-cv-00438-WBS-GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006).

Review of a proposed class action settlement ordinarily involves two hearings. *See* Manual for Complex Litigation (4th) § 21.632.  First, the court conducts a preliminary fairness evaluation and, if applicable, considers class certification.  If the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of certification and proposed settlement to the class members. *Id.* (noting that if the parties move for both class certification and preliminary approval, the certification hearing and preliminary fairness evaluation can usually be combined).  Second, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.*; *see also Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261, 1266–67 (9th Cir. 2010).

Here, the parties move for preliminary approval of a class settlement and preliminary class certification.  Though Rule 23 does not explicitly provide for such a procedure, federal courts generally find preliminary approval of settlement and notice to the proposed class appropriate if the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval."

1   *Lounibos v. Keypoint Gov't Solutions Inc.*, No. 12-00636, 2014 WL 558675, at *5 (N.D. Cal.

2   Feb. 10, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal.

3   2007)); *see also* Newberg on Class Actions § 13:13 (5th ed. 2011); *Dearauju v. Regis Corp.*, Nos.

4   2:14-cv-01408-KJM-AC, 2:14-cv-01411-KJM-AC, 2016 WL 3549473 (E.D. Cal. June 30, 2016)

5   ("Rule 23 provides no guidance, and actually foresees no procedure, but federal courts have

6   generally adopted [the process of preliminarily certifying a settlement class].").

7                                                    ANALYSIS

8   **I.      Class Certification under Rule 23(c)(1)**

9            Plaintiff seeks preliminary certification of the following proposed settlement classes under

10  Federal Civil Procedure Rule 23(c)(1):

11              The "California Rule 23 Class Member(s)" or "California Class"
                means all persons employed by Defendant in California in a
12              Covered Position at any time during the period from October 18,
                2008 through November 30, 2016.  There are an estimated 353
13              members in this group, which includes current and former
                employees who performed work for Defendant solely in California,
14              as well as employees who performed work for Defendant both in
                California as well as outside of California.

15
                "Covered Position" means a drilling fluid specialist, mud engineer,
16              mud man, mud man trainee, or consultant mud man, or equivalent
                title, as enumerated in Appendix No. 1 to this Agreement.
17

18  (Doc. No. 76-2 at 88.)[2]

19

    _____

20  [2] Additionally, plaintiffs seek continued conditional certification of the following FLSA class for

21  settlement purposes:

22              "FLSA Collective Action Class" means the 115 individuals
                employed by Defendant in a Covered Position during the period
23              from August 5, 2010 through November 30, 2016, who previously
                consented to join the Federal Labor Standards Act Collective
24              Action, pursuant to Section 16(b), 29 U.S.C. § 216(b), ("FLSA")
                and who have not performed work for Defendant in California
25              during that time period.

26  (Doc. Nos. 76-2 at 88; 80 at 3.)  Plaintiffs initially requested that this class period commence on
    November 26, 2011, but to comport with the FLSA class that the previously assigned district
27  judge had already conditionally certified, plaintiffs changed this to August 5, 2010.  (Doc. No. 80
    at 3.)  As defined, this class includes all members who were part of the FLSA class that the
28  previously assigned district judge had conditionally certified.

                                                        6

Under Rule 23(c)(1), courts must determine by order whether an action should be maintained as a class action "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1). Though the parties in this case have stipulated that a settlement class exists, the court must independently consider whether the proposed class meets the requirements of Rule 23 both at this stage and at the later fairness hearing.[3] *See Pointer v. Bank of Am. Nat'l Assoc.*, No. 2:14-cv-00525-KJM-CKD, 2016 WL 696582, at *3 (E.D. Cal. Feb. 22, 2016) (citing *Amchem Prods., Inc.*, 521 U.S. at 622).

Certification requires satisfaction of the pre-requisites of Rule 23(a) and (b). *Id.* As noted above, courts analyzing a motion to certify a settlement class must pay "undiluted, even heightened attention" to Rule 23 requirements. *See Amchem*, 521 U.S. at 620, n.16. A thorough Rule 23 analysis is especially important where a motion to certify a settlement class is unopposed, because in such circumstances "[t]here is no advocate to critique the proposal on behalf of absent class members." *Kakani v. Oracle Corp.*, No. 06-06493, 2007 WL 1793774, at *1 (N.D. Cal. June 19, 2007). "The problem is greater at this preliminary approval stage, where objectors are unlikely to have already appeared." *Pointer*, 2016 WL 696582, at *4.

On a motion for preliminary approval, plaintiff bears the burden of persuasion that the proposed class satisfies Rule 23 requirements. Even at the preliminary stage, "[a] court that is not

---

[3] The 2003 Amendments to Federal Civil Procedure Rule 23 eliminated the provision stating that class certification orders "may be conditional," and circuit courts have subsequently reached different conclusions about the continued viability of conditional or preliminary certification of settlement classes under the amended rule. *Compare Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of America*, 453 F.3d 179, 186 n.8 (3d Cir. 2006) ("[T]he 2003 amendments to the Rule eliminated so-called "conditional" certifications—formerly available under Rule 23(c)(1)(C)"); *with Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (concluding that "conditional certification survives the 2003 amendment to Rule 23(c)(1)"). In the absence of Ninth Circuit guidance on the issue, this court will not depart from the procedure commonly employed by district courts in this circuit of certifying settlement classes on a preliminary basis for settlement purposes, and deferring final class certification until after the fairness hearing. *See Denney*, 443 F.3d at 269 (noting that federal district courts "continue to employ this practice," and that the process of "preliminary" certification is endorsed by the Manual for Complex Litigation and Moore's Federal Practice). Before granting preliminary certification, the court nonetheless must carry out a searching, rather than a cursory, Rule 23 analysis. *See Amchem Prods., Inc.*, 521 U.S. at 622 (requiring "undiluted, even heightened attention [to Rule 23 requirements] in the settlement context"); *cf. Pointer*, 2016 WL 696582, at *5 ("[D]espite the Supreme Court's cautions in *Amchem* . . . a cursory approach appears the norm").

satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met."  Advisory Committee 2003 Note on Fed. R. Civ. P. 23(c)(1).

A.  Rule 23(a) Requirements

Rule 23(a) establishes four prerequisites for class action litigation: (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of representation."  *See Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).  The court addresses each requirement below.

i.  *Numerosity*

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  The numerosity requirement demands "examination of the specific facts of each case and imposes no absolute limitations."  *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980).  Courts have found the requirement satisfied when the class comprises of as few as thirty nine members, or where joining all class members would serve only to impose financial burdens and clog the court's docket.  *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing *Jordan v. L.A. Cnty.*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810); *In re Itel Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981).

There are an estimated 353 putative California class members.  (Doc. No. 76-1 at 29.) This number is sufficient to satisfy the numerosity requirement of Rule 23(a)(1).

i.  *Commonality*

Rule 23(a) also requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  To satisfy the commonality requirement, the class representatives must demonstrate that common points of facts and law will drive or resolve the litigation.  *Dukes*, 564 U.S. at 350 ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.") (internal citations omitted).   "Commonality is generally satisfied where . . . 'the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'"  *Franco v. Ruiz Food Prods., Inc.*, No. CV 10-02354 SKO, 2012 WL 5941801, at *5 (E.D. Cal. Nov. 27, 2012) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)).

The rule does not require all questions of law or fact to be common to every single class member. *See Hanlon*, 150 F.3d at 1019 (noting that commonality can be found through "[t]he existence of shared legal issues with divergent factual predicates"). However, the raising of merely any common question does not suffice. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) ("[a]ny competently crafted class complaint literally raises common 'questions.'") (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131–132 (2009)).

Here, plaintiffs allege defendant implemented and applied uniform employment policies and practices, which classified all "mud men" as exempt from the requirements of overtime compensation. (Doc. No. 76-1 at 29.) Federal courts have found similar questions concerning compliance with California Labor Code standards to meet the commonality requirements of Rule 23(a)(2). *See Rodriguez v. Kraft Foods Group, Inc.*, No. 1:14-cv-1137-LJO-EPG, 2016 WL 5844378, at *4 (E.D. Cal. Oct. 5, 2016); *Palacios v. Penny Newman Grain, Inc.*, No. 1:14-cv-01804-KJM, 2015 WL 4078135, at *4 (E.D. Cal. July 6, 2015); *Clesceri v. Beach City Investigations & Protective Services, Inc.*, No. CV-10-3873-JST (RZx), 2011 WL 320998, at *5 (C.D. Cal. Jan. 27, 2011). "Minor factual differences . . . do not defeat commonality." *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *3 (E.D. Cal. 2008). Accordingly, plaintiff has met the commonality prerequisite for class certification under Rule 23.

### ii.   Typicality

Rule 23(a)(3) demands that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), abrogated on other grounds by *Johnson v. California*, 543 U.S. 499, 504–05 (2005). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong*, 275 F.3d at 868; *see also Rodriguez v. Hayes,* 591 F.3d 1105, 1124 (9th Cir. 2010); *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses). While representative claims must be "reasonably co-extensive with those of

9

1   absent class members," they "need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

2           In their motion for preliminary class certification, plaintiffs contend that the typicality

3   requirement is met because their claims and the putative class claims arise from a common

4   source—M-I Swaco's policy and practice of exempting from the requirements of overtime

5   compensation all persons employed in a covered position as any time during the class period.

6   (Doc. No. 76-1 at 29.)  Furthermore, these claims are based upon identical legal theories.  (*Id*. at

7   29–20.)  Finally, plaintiff's interests are aligned with those of the putative class.  (*Id*. at 30.)  The

8   court finds that plaintiffs' claims are reasonably co-extensive with those of absent class members,

9   and that typicality is therefore satisfied.

10                          *iii.   Adequacy of Representation*

11          The final Rule 23(a) prerequisite is satisfied if "the representative parties will fairly and

12  adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The proper resolution of

13  this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel

14  have any conflicts of interest with other class members and (b) will the named plaintiffs and their

15  counsel prosecute the action vigorously on behalf of the class?"  *In re Mego Fin. Corp. Sec.*

16  *Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020.); *see also Pierce v.*

17  *County of Orange*, 526 F.3d 1190, 1202 (9th Cir. 2008).

18          Plaintiff seeks appointment of plaintiffs' attorneys as class counsel. (Doc. Nos. 29-1 at 17;

19  29-7 at 2–3, ¶ 7.)  There is nothing in the record suggesting that plaintiff or counsel have any

20  conflict of interest with other absent class members.  Plaintiff's claims thus appear "completely

21  aligned with [that] of the class," and there is no conflict apparent at this stage.  *Collins*, 274

22  F.R.D. at 301.  Plaintiff's attorneys are experienced class action litigators, as reflected in

23  declarations submitted with plaintiffs' motion for preliminary class certification.  (Doc. Nos. 76-2

24  at 2–7; 76-3; 76-4; 76-5.)  Finally, the named plaintiffs have been involved in the litigation

25  process, further supporting adequacy of representation.  (Doc. Nos. 76-6 and 76-7.)  *See*

26  *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 596 (E.D. Cal. 2008).  The court

27  therefore finds that plaintiff satisfies the adequacy of representation requirement.

28  /////

B. Rule 23(b)(3) Requirements

The parties here seek certification under Rule 23(b)(3).  (Doc. No. 29-1 at 16.)  Rule 23(b)(3) requires: (i) "that the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (ii) "that a class action is superior to other available method[s] for fairly and efficiently adjudicating the controversy."  The test of Rule 23(b)(3) is "far more demanding," than that of Rule 23(a).  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 623–24).  The court will examine each requirement in turn.

*i. Predominance*

First, the common questions must "predominate" over any individual questions. While this requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much higher at this stage of the analysis.  *Dukes*, 564 U.S. at 359; *Amchem*, 521 U.S. at 624–25; *Hanlon*, 150 F.3d at 1022.  While Rule 23(a)(2) can be satisfied by even a single question, Rule 23(b)(3) requires convincing proof the common questions "predominate."  *Amchem*, 521 U.S. at 623–24; *Hanlon*, 150 F.3d at 1022.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Hanlon*, 150 F.3d at 1022; *see also Edwards v. First American Corp.,* 798 F.3d 1172, 1182 (9th Cir. 2015).

Here, plaintiffs contend their claims and the putative class claims arise from a common source—M-I Swaco's policy and practice of exempting from the requirements of overtime compensation all persons employed in a covered position as any time during the class period. (Doc. No. 76-1 at 29.)  Furthermore, these claims are based upon identical legal theories.  (*Id*. at 29–20.)  *See generally Hanlon*, 150 F.3d at 1022 (explaining that common questions involve a "common nucleus of facts and potential legal remedies").  The predominance requirement of Rule 23(b) has therefore been met here.

/////

/////

11

*ii. Superiority*

Rule 23(b)(3) also requires a court to find "a class action is superior to other available methods for the fair adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); *see also Edwards*, 798 F.3d at 1178. In resolving the Rule 23(b)(3) superiority inquiry, "the court should consider class members' interests in pursuing separate actions individually, any litigation already in progress involving the same controversy, the desirability of concentrating in one forum, and potential difficulties in managing the class action—although the last two considerations are not relevant in the settlement context." *Palacios*, 2015 WL 4078135, at *6 (citing *Schiller v. David's Bridal Inc.*, No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001, at *10 (E.D. Cal. June 11, 2012)).

Here, plaintiffs contend class treatment is the superior method for resolving all claims in this case because a class action would (1) accomplish judicial economy by avoiding multiple suits, and (2) protect the rights of persons who might not be able to present claims on an individual basis. (Doc. No. 76-1 at 30.) There also appear to be no individual actions now pending, or any other impediments to managing the proposed class. In light of these factors, a class action is superior to individual resolution of the wage and hour claims of the proposed class members. *See Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (finding the Federal Civil Procedure Rule 23(b)(3) superiority requirement met given the evidence that potential class members' claims would not be economical to litigate individually, the lack of similar pending actions, and the absence of any other obstacles to managing the class). The superiority requirement is thus satisfied here.

**II.    Proposed Settlement**

Plaintiff seeks approval of their proposed settlement agreement. (Doc. No. 76.) Under Rule 23(e), a court may approve a class action settlement only if the settlement is fair, reasonable, and adequate. *Bluetooth*, 654 F.3d at 946. "[P]reliminary approval of a settlement has both a procedural and substantive component." *See, e.g.*, *In re Tableware Antitrust Litigation*, 484 F. Supp. 2d at 1079 (citing *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)). In particular, preliminary approval of a settlement and notice to the proposed class is appropriate if: (i) the proposed settlement appears to be the product of serious,

informed, non-collusive negotiations; and (ii) the settlement falls within the range of possible

approval, has no obvious deficiencies, and does not improperly grant preferential treatment to

class representatives or segments of the class.  *Id.*; *see also Ross v. Bar None Enterprises, Inc.*,

No. 2:13–cv–00234–KJM–KJN, 2014 WL 4109592, at *9 (E.D. Cal. Aug. 19, 2014).  However, a

district court reviewing a proposed settlement is not to "reach any ultimate conclusions on the

contested issues of fact and law which underlie the merits of the dispute."  *Chem. Bank v. City of

Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).[4]

A. Procedural Adequacy

The first factor relevant to the court's preliminary approval of settlement addresses the

means by which the parties reached the proposed settlement.  *Pierce v. Rosetta Stone, Ltd.*, No. C

11–01283 SBA, 2013 WL 1878918, at * 4 (N.D. Cal. 2013).  The proposed settlement in the

instant case resulted from non-collusive negotiation, after mediation on September 1, 2016, in

Encino, California, with mediator Jeffrey Krivis.  (Doc. No. 76-2 at 14.)  Moreover, the parties

agreed to settlement after conducting significant discovery in this action.  (*Id.* at 10–14.)  In

particular, plaintiffs propounded their opening round of discovery on or about July 15, 2013,

serving interrogatories, and requests for production of documents, and noticed defendant's Rule

30(b)(6) deposition.  (*Id*. at 12.)  Defendant served its responses to all outstanding discovery on

October 7, 2013.  (*Id*.)  On August 22, 2013, defendant served each plaintiff with separate

requests for production of documents that each plaintiff responded to on October 22, 2013.  (*Id*.)

On January 6, 2014 class counsel took the deposition of Reginald Stanfield, the operation

manager for defendant's west coast district.  (*Id*.)  Depositions were also taken of plaintiffs

Ashley Balfour and Sarmad Syed on January 7 and 8, 2014, and of FLSA class members Alan

Crane and Adam Doherty on February 18, and 19, 2014.  (*Id*.)  Plaintiffs propounded a second set

of document production requests on April 16, 2014, to which defendant responded on June 6,

---

[4] The procedure for settling a FLSA collective action is less defined and generally less stringent than the procedure for settling a Rule 23 class action. *See Tyson Foods, Inc. v. Bouaphakeo*, ___ U.S. ____, 136 S. Ct. 1036, 1045 (2016) ("This opinion assumes, without deciding . . . that the standard for certifying a collective action under the FLSA is no more stringent than the standard for certifying a class under [Rule 23].")

2014.  (*Id.* at 13.)  On December 24, 2015, plaintiffs served a second set of interrogatories, to which defendant responded on February 16, 2016.  (*Id.*)  The parties further agreed to the settlement after the FLSA class was conditionally certified on November 26, 2014, and after the Rule 23 motion for class certification had been filed.  (*Id.* at 11.)  Based on this history of the proceedings, and without any sign of collusion based on the current record, the court finds the parties have sufficiently shown the settlement was the product of informed, arm's length negotiations deserving of preliminary approval.  *See Palacios*, 2015 WL 4078135, at *8 ("[I]t appears that the settlement was arrived at for strategic reasons that benefitted the Classes, rather than Class Counsel's inability or unwillingness to pursue further litigation.").

B. Substantive Adequacy

In conducting the preliminary fairness determination, the court must also consider whether the settlement itself is substantively fair, reasonable, and adequate.  *See Bluetooth*, 654 F.3d at 945.  Several factors bear on the inquiry, including the size of the settlement award, the nature of the claims released, the amount of attorneys' fees awarded, and the size of the incentive payment to class representatives.  *See Hanlon*, 150 F.3d at 1026; *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09–00261 SBA (EMC), 2012 WL 5878390, at *6–7 (N.D. Cal. Nov. 21, 2012).

i. *Adequacy of the Settlement Amount*

To evaluate the fairness of the settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation."  *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968).  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d at 459.

Here, the gross settlement amount is $7,000,000 with an estimated $4,505,166.67, less employer-sided payroll taxes, to be distributed to class members.  (Doc. No. 76-2 at 14.)  Based on a review of defendant's business and personnel records, there are an estimated 115 FLSA class members who worked an estimated 6,074 weeks during the FLSA class period, and 353 California class members who worked an estimated 23,880 weeks during the California class

period. (*Id*. at 14–15.)  To account for the greater value of the California class members' claims for overtime wages,[5] the violation of the various California Labor Code claims, and the additional year of damages under Business and Professions Code § 17200, the weeks worked by California Class members was multiplied by three.  (*Id*. at 15.)[6]  FLSA class members who worked for the duration of the FLSA class period of 261.4 weeks would receive an estimated $14,437.12, less taxes.  (*Id*.)  California class members who worked for the duration of the California class period of 423.3 weeks would receive an estimated $70,148.91.  (*Id*.)  Based upon the data exchanged, pay and work week information, the proposed settlement of $7,000,000 is approximately 35% of the major class overtime claims.  (*Id*. at 20.)[7]  Plaintiffs represent that during mediation each side recognized the substantial risk of an adverse result and agreed to this compromise.  (*Id*. at 14.)  Plaintiffs note that pursuing further litigation risks (1) the court's denial of certification of their Rule 23 proposed class; and (ii) an unfavorable result on the merits on summary judgment or at trial and/or on appeal, a process that can take several more years to litigate.  (Doc. No. 76-1 at 21–22.)  The court finds, based on the information provided by

/////

---

[5]  Contrary to the parties' assertion, California law and the FLSA both provide an overtime rate of one and one-half times for each hour over forty worked.  *See* CAL. LABOR CODE § 510(a) (West 2000); 29 C.F.R. § 778.409.  California overtime provisions are, however, additionally triggered for non-exempt employees for each hour worked over eight hours in a day as well as for the first eight hours worked on the seventh consecutive day of work.  *See* LABOR § 510(a).  California employers, with a few exceptions, must also pay double-time for twelve or more hours worked in a day, and for all hours worked over eight on the seventh day of work.  (*Id*.)

[6]  Distributing the net settlement amount between the FLSA class and the California class this way is consistent with other hybrid settlements approved in this district.  *See Millan v. Cascade Water Servs., Inc.*, No. 1:12-cv-01821-AWI-EPG, 2016 WL 3077710, at *1 (E.D. Cal. May 31, 2016) (approving settlement agreement where FLSA settlement group received thirty-four percent of the net settlement and the Rule 23 settlement group for California labor claims received sixty-six percent of the net settlement).

[7]  The Ninth Circuit has observed that "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.' " *Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).  When analyzing the amount offered in settlement, the court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."  *Id*. at 625, 628.

1    plaintiffs in their moving papers, that the settlement award in this case appears to be fair and

2    reasonable.

3                    ii.   *Attorneys' Fees*

4           When a negotiated class action settlement includes an award of attorneys' fees, the fee

5    award must be evaluated in the overall context of the settlement.  *See Knisley v. Network Assocs.*,

6    312 F.3d 1123, 1126 (9th Cir. 2002).  At the same time, the court "ha[s] an independent

7    obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties

8    have already agreed to an amount."  *Bluetooth*, 654 F.3d at 941; *see also Zucker v. Occidental*

9    *Petroleum Corp.*, 192 F.3d 1323, 1328–29 (9th Cir. 1999).  Where, as here, fees are to be paid

10   from a common fund, the relationship between the class members and class counsel "turns

11   adversarial."  *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 994 (9th Cir.

12   2010) (quoting *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir.

13   1994)).  As a result, the district court must assume a fiduciary role for the class members in

14   evaluating a request for an award of attorney fees from the common fund.  *Id.*; *Rodriguez v. W.*

15   *Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

16          The Ninth Circuit has approved two methods for determining attorneys' fees in such cases

17   where the attorneys' fee award is taken from the common fund set aside for the entire settlement:

18   the "percentage of the fund" method and the "lodestar" method.  *Vizcaino v. Microsoft Corp.*, 290

19   F.3d 1043, 1047 (9th Cir. 2002) (citation omitted).  The district court retains discretion in

20   common fund cases to choose either method.  *Id.*; *Vu*, 2016 WL 6211308, at *5.  Under either

21   approach, "[r]easonableness is the goal, and mechanical or formulaic application of either

22   method, where it yields an unreasonable result, can be an abuse of discretion."  *Fischel v.*

23   *Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

24          Under the percentage of the fund method, the court may award class counsel a given

25   percentage of the common fund recovered for the class.  *Id.*  In the Ninth Circuit, a twenty-five

26   percent award is the "benchmark" amount of attorneys' fees, but courts may adjust this figure

27   upwards or downwards if the record shows "special circumstances justifying a departure."  *Id.*

28   (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).

To assess whether the percentage requested is reasonable, courts may consider a number of factors, including

> [T]he extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (internal quotation marks omitted). The Ninth Circuit has permitted courts to award attorneys' fees using this method "in lieu of the often more time-consuming task of calculating the lodestar." *Bluetooth*, 654 F.3d at 942.

In this case, in addition to the FLSA claims, plaintiff brings various California state law claims. Previously, under California law, "[t]he primary method for establishing the amount of reasonable attorney fees [was] the lodestar method." *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1053 (2003) (internal quotation marks and citations omitted). The court determines the lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001). The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). However, the California Supreme Court recently also endorsed the percentage of the fund method for calculating reasonable attorneys' fees. *See Laffitte v. Robert Half Int'l Inc.*, 1 Cal.5th 480, 486 (2016). Nonetheless, the Ninth Circuit has recommended that district courts apply one method but cross-check the appropriateness of the amount by employing the other, as well. *See Bluetooth*, 654 F.3d at 944.

Here, the settlement provides for attorneys' fees of not more than one-third of the gross settlement amount, for a total of not in excess of $2,333,333.33. (Doc. No. 76-2 at 38.) Furthermore, "[i]n the event the Court awards less than the amounts requested by Class Counsel for the attorneys' fees and/or costs, the difference shall become part of the NSA and be available for distribution to Participating Class Members." (*Id.*) Plaintiffs have not yet explained why the

court should depart from the twenty-five percent benchmark applicable in this circuit, but indicate in their motion that counsel ultimately intends to provide the court with details on the hours expended and the litigation expenses advanced. (Doc. No. 76-1.) The court approves the attorneys' fee request on a preliminary basis. However, the court will closely review the requested award of attorneys' fees at the final fairness hearing. The court will cross check with the lodestar amount based upon counsels' submission to determine whether an above-benchmark percentage is appropriate in this case and, if so, by how much. *See Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000) (noting that an explanation is necessary when the district court departs from the twenty-five percent benchmark).

               iii.  *Class Member's Released Claims*

As part of the settlement, all participating California class members release:

> [A]ny and all claims and causes of action alleged in the Complaint in the Action for violation of any state or federal statute, rule or regulation, including state or federal wage and hour laws, whether for economic damages, non-economic damages, restitution, penalties, or liquidated damages including, without limitation, claims alleged in the Complaint for: (1) failure to pay minimum and/or overtime wages pursuant to California Labor Code ("LC") §§ 510, 1194; (2) failure to provide meal periods and rest periods or compensation in lieu thereof in violation of LC §§ 226.7, 512; (3) failure to timely pay wages to terminated employees, LC §§ 201-203; (4) failure to comply with itemized employee wage statement provisions, LC §§ 226, 1174; (5) violation of California's UCL, Business and Professions Code § 17200, et seq., based on the claims alleged in the Complaint; and (6) violation of the Private Attorneys General Act of 2004 ("PAGA"), LC § 2698, et seq., based on the claims alleged in the Complaint ("California Released Claims"). The California Released Claims include all actions, causes of action, grievances, obligations, costs, expenses, damages, losses, claims, liabilities, suits, debts, demands, and benefits (including attorneys' fees and costs actually incurred), of whatever character, in law or in equity, known or unknown, asserted, whether in tort or contract, based on the claims and causes of action alleged in the Complaint. The California Released Claims exclude the release of any claims not permitted to be released by law, and exclude all claims and causes of actions for any type of discrimination, harassment, or retaliation as well as any type of employment termination.

(Doc. No. 76-2 at 27–28.) Similarly, the participating FLSA class members' released claims are:

> (1) the release to be given upon the endorsement and deposit of Settlement Payment checks by California Rule 23 Class Members; and (2) the release to be given by the FLSA Collective Action Class

18

1
2

Members.  The FLSA Released Claims consist of claims for the alleged failure to pay minimum and overtime in violation of the FLSA, 29 U.S.C. §§ 201-219 ("FLSA Released Claims").

3  (*Id*. at 29.)  Altogether, these released claims track those advanced by plaintiff in the action and

4  the settlement does not release unrelated claims that class members may have against defendants.

5  *See Williams v. Costco Wholesale Corp.*, 2010 WL 761122, at *2, 6 (S.D. Cal. Mar. 4, 2010)

6  (finding a release with similar language to be fair and reasonable); *cf. Bond v. Ferguson Enter.,*

7  *Inc.*, No. 1:09-cv-01662-OWW-MJS, 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011) ("This

8  form of release is overbroad by arguably releasing all unrelated claims up to the date of the

9  Agreement.").

10  *iv.   Treatment of Class Representatives*

11  The settlement agreement provides for a class representative payment of $20,000 to

12  plaintiff Sarmad Syed and $15,000 to plaintiff Ashley Balfour.  (Doc. No. 76-2 at 37–38.)  The

13  settlement agreement further provides that "[i]n the event the court does not approve the entirety

14  of the application for the Class Representative Service Payment and it is less than the amount

15  requested, the difference shall become part of the NSA and be available for distribution to

16  Participating Class Members."  (*Id.* at 38.)

17  At its discretion, a district court may award incentive payments to named plaintiffs in

18  class action cases.  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).  The

19  purpose of incentive awards is to "compensate class representatives for work done on behalf of

20  the class, to make up for financial or reputational risk undertaking in bringing the action, and,

21  sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez*, 563

22  F.3d at 958–59.

23  To justify an incentive award, a class representative must present "evidence demonstrating

24  the quality of plaintiff's representative service," such as "substantial efforts taken as class

25  representative to justify the discrepancy between [his] award and those of the unnamed

26  plaintiffs."  *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008).  Such incentive awards

27  are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant

28  reputational risk by bringing suit against their former employers.  *Rodriguez*, 563 F.3d at 958–59.

19

The Ninth Circuit has emphasized that "district courts must be vigilant in scrutinizing all incentive awards." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal quotation marks and citation omitted).  In particular, district courts have declined to approve incentive awards that represent an unreasonably high proportion of the overall settlement amount, or that are disproportionate relative to the recovery of other class members. *See Ontiveros*, 303 F.R.D. at 365–66; *see also Ko v. Natura Pet Prods., Inc.*, Civ. No. 09–2619 SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (holding that an incentive award of $20,000, comprising one percent of the approximately $2 million common fund was "excessive under the circumstances" and reducing the incentive award to $5,000); *Wolph v. Acer America Corporation*, No. C 09–01314 JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (reducing the incentive award to $2,000 where class representatives did not demonstrate great risk to finances or reputation in bringing the class action).  Courts have reasoned that overcompensation of class representatives could encourage collusion at the settlement stage of class actions by causing a divergence between the interests of the named plaintiff and the absent class members, thus jeopardizing adequacy of class representatives.  *See Staton*, 327 F.3d at 977–78; *see also Radcliffe*, 715 F.3d at 1165 (noting that unreasonably high incentive awards can destroy adequacy of class representatives).

Here, the settlement agreement provides for a class representative payment of $20,000 to plaintiff Sarmad Syed and $15,000 to plaintiff Ashley Balfour, which represents approximately .3% and .2% of the gross settlement fund, respectively.  (Doc. No. 76-2 at 37–38.)  Plaintiff argues that the proposed incentive awards are reasonable in light of plaintiffs' "time, effort, risks undertaken for the payment of costs in the event this action had been unsuccessful, and stigma upon future employment opportunities for having initiated this action against a former, employer, and general release of all claims related to their employment."  (Doc. No. 76-1 at 28.)  Plaintiffs' have submitted declarations detailing their extensive involvement in this action.  (Doc. Nos. 76-6 and 76-7.)

The court thus finds that the incentive award proposed by the parties is not excessive for purposes of preliminary approval.  During the final fairness review, the court will determine

whether the requested incentive award is appropriate in light of "the proportion of the payments

relative to the settlement amount," "the size of the payment," "the actions the plaintiff has taken

to protect the interests of the class, the degree to which the class has benefitted from those

actions," "the amount of time and effort the plaintiff expended in pursuing the litigation," and any

"reasonable fears of workplace retaliation." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir.

2003); *see also Deatrick*, 2016 WL 5394016, at *8 (finding that while $5,000 was a

presumptively reasonable incentive award in the Ninth Circuit, such an award in that case was not

warranted because plaintiff did not offer details regarding the actions the plaintiff had taken to

protect the interests of the class).

> *v.  PAGA Penalty Claims*

The settlement of the claims for penalties under PAGA for civil penalties in the sum of

$75,000 (75% of $100,000) will be paid to the Labor Workforce Development Agency and

$25,000 will be paid to the class.  (Doc. Nos. 76-1 at 31 and 76-2 at 38.)

In one recent district court case, the LWDA provided some guidance regarding court

approval of PAGA settlements.  *See* California Labor and Workforce Development Agency's

Comments on Proposed PAGA Settlement ("LWDA Comments"), *O'Connor v. Uber Techs.,*

*Inc.*, No. 3:13-cv-03826-EMC (N.D. Cal. Jul. 29, 2016), ECF No. 736 at 2–3.[8]  In that case,

where both class action and PAGA claims were covered by a proposed settlement, the LWDA

stressed that

> when a PAGA claim is settled, the relief provided for under the
> PAGA be genuine and meaningful, consistent with the underlying
> purpose of the statute to benefit the public and, in the context of a
> class action, the court evaluate whether the settlement meets the
> standards of being "fundamentally fair, reasonable, and adequate"
> with reference to the public policies underlying the PAGA.

*Id.; see also Salazar v. Sysco Central California, Inc.*, No. 1:15-cv-01758-DAD-SKO, slip op. at

4 (E.D. Cal. Feb. 2, 2017) (quoting the same with approval); *O'Connor v. Uber Techs., Inc.*, ___

---

[8]  *See also id.* at 3 ("The LWDA is not aware any existing case law establishing a specific
benchmark for PAGA settlements, either on their own terms or in relation to the recovery on
other claims in the action.").\

1  F. Supp. 3d ___, No. 3:13-cv-03826-EMC, 2016 WL 4398271, at *17 (N.D. Cal. Aug. 18, 2016)

2  (same).

3       Assuming thirty-five workweeks per year due to regular time off, counsel estimated a

4  $53,600,000 in potential PAGA exposure.  (Doc. No. 80 at 4.)  The $100,000 penalty payment,

5  however, represents 2.53% of the estimated $3.95 million gross settlement amount allocated to

6  the California class, for whom the PAGA claim applies.  (*Id*.)  This exceeds in percentage and in

7  absolute number PAGA awards approved in other cases.  *See Garcia v. Gordon Trucking, Inc.*,

8  No. 1:10-cv-0324-AWI-SKO, 2012 WL 5364575, at *7 (E.D. Cal. Oct. 31, 2012) (approving

9  $10,000 PAGA penalty for a California class with a $3.7 million gross settlement payment).

10  Having reviewed the parties' submission and the terms of the proposed settlement, for the

11  purposes of preliminary approval, the court finds that the settlement amount related to plaintiffs'

12  PAGA claims is fair, reasonable, and adequate in light of the public policy goals of PAGA.

13  **III.     Proposed Class Notice and Administration**

14       For proposed settlements under Rule 23, "the court must direct notice in a reasonable

15  manner to all class members who would be bound by the proposal.  Fed. R. Civ. P. 23(e)(1); *see*

16  *also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement

17  under Rule 23(e).").  A class action settlement notice "is satisfactory if it generally describes the

18  terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate

19  and to come forward and be heard."  *Churchill Vill., LLC v. Gen. Elec.*, 561 F.3d 566, 575 (9th

20  Cir. 2004) (internal quotations and citations omitted).

21       Here, plaintiff's proposed notice describes what the case is about and the terms of the

22  settlement, informs the class of the attorneys' fee amount and the proposed distribution of the

23  settlement amount, provides information concerning the time, place, and date of the final

24  approval hearing, and informs absent class members that they may come to the hearing and how

25  to obtain permission to speak at the hearing.  (Doc. No. 76-2 at 67–80.)  It also notifies absent

26  class members about how they may object to the proposed settlement or opt out.  (*Id.*)

27       The court finds that the notice and the manner of notice proposed by plaintiff meets the

28  requirements of Federal Civil Procedure Rule 23(c)(2)(B) and that the proposed mail delivery is

1  also appropriate in these circumstances.

2                                    ORDER

3        For all of the reasons stated above:

4   1.  Preliminary class certification is approved for settlement purposes for the following

5        classes:

6           "FLSA Collective Action Class" means the 115 individuals
            employed by Defendant in a Covered Position during the period
7           from August 5, 2010 through November 30, 2016, who previously
            consented to join the Federal Labor Standards Act Collective
8           Action, pursuant to Section 16(b), 29 U.S.C. § 216(b), ("FLSA")
            and who have not performed work for Defendant in California
9           during that time period.

10          The "California Rule 23 Class Member(s)" or "California Class"
            means all persons employed by Defendant in California in a
11          Covered Position at any time during the period from October 18,
            2008 through November 30, 2016.  There are an estimated 353
12          members in this group, which includes current and former
            employees who performed work for Defendant solely in California,
13          as well as employees who performed work for Defendant both in
            California as well as outside of California.

14
            "Covered Position" means a drilling fluid specialist, mud engineer,
15          mud man, mud man trainee, or consultant mud man, or equivalent
            title, as enumerated in Appendix No. 1 to the Agreement and
16          attached to this Order.

17  2.  The proposed settlement is approved on a preliminary basis as fair and adequate;

18  3.  The court approves and appoints plaintiffs Sarmad Syed and Ashley Balfour as the class

19      representatives;

20  4.  The court approves and appoints the law firms of Spiro Law Corp., Blanchard Law Group,

21      APC, the Holmes Law Group, APC and Cohelan, Khoury, & Singer as class counsel;

22  5.  The court approves and appoints CPT Group, Inc., as the settlement administrator to

23      administrate the settlement pursuant to the terms of the Agreement;

24  6.  The proposed form of notice conforms with Federal Rule of Civil Procedure 23 and is

25      approved;

26  7.  The hearing for final approval of the proposed settlement is set for Thursday, July 6, 2017,

27      at 9:30 a.m.; and

28  /////

8.  Plaintiff's counsel are directed to submit a proposed order for the court's consideration setting calendar dates for a settlement implementation schedule now that this order has issued.

IT IS SO ORDERED.

Dated:    **February 22, 2017**

_____
UNITED STATES DISTRICT JUDGE

**APPENDIX NO. 1**

(Covered Positions/Titles Held by Class Members)

Compliance Specialist

Compliance Specialist Base

Compliance Specialist Base +

COMPLIANCE SPECIALIST G07

Compliance Specialist G07 Base+

Compliance Specialist I

Compliance Specialist I Base +

Compliance Specialist I+

Compliance Specialist II

Compliance Specialist II Base +

Consultant

CONSULTANT DRILLING FLUIDS SPECIALIST

Contingent Worker

DFS III, Flying Squad Lead

DFSIV

Drillin Fluids Engineer Trainee

Drilling Fluids Specialist

Drilling Fluids Specialist

Drilling Fluid Engineer Trainee

Drilling Fluid Specialist

Drilling Fluid Specialist 1

Drilling Fluid Specialist 2

Drilling Fluid Specialist Trainee

1

2   DRILLING FLUIDS /CONTIGENT

3   Drilling Fluids Engineer

4   Drilling Fluids Engineer Base

5   Drilling Fluids Engineer Trainee

6   Drilling Fluids Spec I

7   Drilling Fluids Specialist

8   Drilling Fluids Specialist SR

9   Drilling Fluids Specialist

10   Drilling Fluids Specialist

11   Drilling Fluids Specialist (1)

12   Drilling Fluids Specialist 1

13   Drilling Fluids Specialist 2

14   Drilling Fluids Specialist 3

15   Drilling Fluids Specialist Base

16

17   DRILLING FLUIDS SPECIALIST G09 BASE+

18   Drilling Fluids Specialist I

19   Drilling Fluids Specialist II

20   Drilling Fluids Specialist II +

21   Drilling Fluids Specialist II+

22   Drilling Fluids Specialist III

23   Drilling Fluids Specialist III +

24   Drilling Fluids Specialist III+

25   Drilling Fluids Specialist IV

26   Drilling Fluids Specialist IV +

27   Drilling Fluids Specialist IV+

28   Drilling Fluids Specialist Manager

1   Drilling Fluids Specialist Sr.

2   Drilling Fluids Specialist Sr. +

3   Drilling Fluids Specialist Sr.

4   Drilling Fluids Specialist Supervisor

5   Drilling Fluids Specialist Trainee

6   Drilling Fluids Specialist, DS - UK

7   Drilling Fluids Specialist, Flying Squad

8   Drilling Fluids Specialist/Contingent

9   Drilling Fluids Supervisor

10  Drilling Fluids Supervisor

11  Drilling Fluids Specialist

12  Drilling Fluids Specialist Sr.

13  Drilling fluids Specialist

14  Especialista De Fluidos Ii

15  Sr. Drilling Fluids Specialist

16  Sr. Drilling Fluids Specialist G11 Base+

17  Sr. Drilling Fluids Specialist Base +

18  Sr. Drilling Fluids Specialist Base

19  Sr. Drilling Fluids Specialist

20

21  SR. DRILLING FLUIDS SPECIALIST +

22  Sr. Drilling Fluids Specialist Base

23  Sr. Drilling Fluids Specialist Base +

24

25  SR. DRILLING FLUIS SPECIALIST

26  Tool Specialist

27  Tool Specialist Sr., WP - UK

28  Tool Specialist, WP - UK

1   Tools Specialist

2   Tools Specialist 2

3   WP Fluids Specialist

4   WP Fluids Specialist 1

5   WP Fluids Specialist 2

6   WP Fluids Specialist 3

7   WP Fluids Supervisor

8   WP Tool Specialist

9   WP Tool Specialist 2

10   WP Tools Specialist

11   WP Tools Specialist 1

12   WP Tools Specialist 2

13   WP Tools Specialist 3

14   WP Tools Specialist III

15   WP Tools Supervisor

16

17

18

19

20

21

22

23

24

25

26

27

28